# LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION
### FILING TYPE:                           OTHER TORT

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY
C/O GIL APELIS AS STATUTORY AGENT CT
CORPORATION SYSTEM
1300 EAST 9TH STREET SUITE 1010
CLEVELAND, OH 44114

G-4801-CI-0201404533-000
JUDGE: MICHAEL R GOULDING

     You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

     You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

     You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service   or   to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

     If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)
WILLIAM E JONES
2101 WALNUT STREET
TOLEDO, OH 43608

ATTORNEY FOR PLAINTIFF(S)
CHAD T MULKEY
GROTH & ASSOCIATES
416 NORTH ERIE ST STE 100
TOLEDO, OH 43604

BERNIE QUILTER
CLERK OF COURTS

Date: November 10, 2014

*Bernie Quilter* _____ , Clerk

FILED
LUCAS COUR...

2014 NOV -7 A 10: 29

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
LUCAS COUNTY, OHIO

CI0201404533

| | |
|---|---|
| **WILLIAM E. JONES**<br>2101 Walnut Street<br>Toledo, Ohio 43608 | ) CASE NO.<br>)<br>) |
| And | ) JUDGE:       Assigned to Judge Cooking<br>) |
| **CANDACE JONES**<br>2101 Walnut Street<br>Toledo, Ohio 43608 | ) <u>COMPLAINT FOR DECLARATORY</u><br>) <u>RELIEF, BREACH OF CONTRACT,</u><br>) <u>BAD FAITH BREACH OF CONTRACT,</u><br>) <u>BREACH OF THE IMPLIED COVENANT</u> |
| Plaintiffs, | ) <u>OF GOOD FAITH AND FAIR DEALING,</u><br>) <u>FRAUD AND DAMAGES WITH JURY</u><br>) <u>DEMAND ENDORSED HEREON</u> |
| vs. | )<br>) Chad T. Mulkey, Esq. (0071983) |
| **ALLSTATE PROPERTY AND**<br>**CASUALTY INSURANCE COMPANY**<br>c/o Gil Apelis, as Statutory Agent<br>CT Corporation System<br>1300 East 9th Street, Suite 1010<br>Cleveland, Ohio 44114 | ) Anne M. Izzi, Esq. (0085083)<br>) GROTH & ASSOCIATES<br>) 416 North Erie Street, Suite 100<br>) Toledo, Ohio 43604<br>) Office: (419) 244-8001<br>) Fax: (419) 930-3032 |
| Defendant. | ) Attorneys for Plaintiff |

Now come Plaintiffs, William E. Jones and Candace Jones, (herein after referred to

collectively as "Plaintiffs Jones") by and through counsel, Chad T. Mulkey and Anne M. Izzi, and

for their Complaint against Allstate Property and Casualty Insurance Company ("Allstate") state

and aver as follows:

## PARTIES

1. Plaintiffs Jones state that at all times material herein, they were residents of Toledo, Lucas County, Ohio and all events occurred therein.

2. Plaintiff Candace Jones has an interest in the property which is the subject of this Complaint by virtue of her marriage to William E. Jones.

3. Plaintiff William E. Jones further states that on November 11, 2013, he held an Insurance Policy ("Insurance Policy") with Defendant Allstate, (Policy No. 980260172), which provided a variety of insurance coverage on Plaintiffs Jones' property located at 716 Yates Street, Toledo, Ohio 43608-2662. (See attached Exhibit "A" Insurance Policy).

4. Plaintiffs Jones further state that Defendant Allstate is authorized to do business in the State of Ohio and maintains a claim office in Hudson, Ohio 44236, as one of its principle places of business.

## GENERAL ALLEGATIONS

5. At all times material herein, Plaintiff William E. Jones paid his insurance premiums and complied or attempted to comply with all conditions precedent to recovery. Any breach of any condition has not prejudiced Defendant Allstate.

6. On or about Monday, November 11, 2013, the property located at 716 Yates Street, Toledo, Ohio 43608 was damaged by fire, resulting in a fire loss.

7.  The fire loss of the property and contents therein, located at 716 Yates Street, Toledo, Ohio 43608 was a loss covered under Plaintiff William E. Jones' Insurance Policy with Defendant, Allstate.

8.  In its denial letter dated April 1, 2014, Defendant Allstate concluded that the fire was intentionally set by Plaintiff William E. Jones or someone acting at his direction.  Defendant Allstate denied Plaintiff Jones' insurance claim, (claim No. 0305744120). (See Attached Exhibit "B" Denial Letter).

### FIRST CAUSE OF ACTION - BREACH OF CONTRACT

9.  Plaintiffs Jones adopt by reference paragraphs one (1) through eight (8) as if fully restated herein.

10. Notwithstanding its contractual obligations to do so, Defendant Allstate has wholly failed, refused, and neglected to perform the obligations imposed upon it by the terms included in the Insurance Policy with Plaintiff William E. Jones, while at the same time realizing the benefit of performance of the conditions of the Insurance Policy imposed upon Plaintiffs Jones.

11. Notwithstanding Defendant Allstate's breach of its Insurance Policy, Plaintiffs Jones sought compliance of the terms of the Insurance Policy and Plaintiffs Jones requested documentation supporting Allstate's denial of performance under the terms of the Insurance Policy. (See Attached Exhibit "C" Collective Correspondence).

12. Defendant Allstate continues to refuse to live up to the obligations it undertook in the Insurance Policy with Plaintiffs Jones relating to the fire loss.

13. Allstate is in breach of the terms of the agreement contained in its Insurance Policy with Plaintiff William E. Jones.

## SECOND CAUSE OF ACTION – BAD FAITH BREACH OF CONTRACT

14. Plaintiffs Jones adopt by reference paragraphs one (1) through thirteen (13) as if fully restated herein.

15. Defendant Allstate has intentionally, willfully, and with gross negligence breached the express terms of its Insurance Policy with Plaintiffs Jones by failing and refusing to honor the terms of the Insurance Policy and resolve Plaintiffs Jones' claim for fire loss under the Insurance Policy.

16. Defendant Allstate, acting and/or failing to act as set forth herein, has intentionally and in bad faith acted with willfulness, malice, gross negligence, and reckless disregard for the rights of its policy holder, Plaintiff William E. Jones.

17. Defendant Allstate's actions are the equivalent of a breach of Allstate's agreement with Plaintiff William E. Jones and were done without a legitimate, reasonable justification and lawful basis. Defendant Allstate's actions evince a wanton and reckless disregard for the rights of Allstate's policyholder, Plaintiff William E. Jones, thereby entitling Plaintiff Jones to recover damages, as hereinafter set forth.

## THIRD CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

18. Plaintiffs Jones adopt by reference paragraphs one (1) through seventeen (17) as if fully restated herein.

19. Defendant Allstate, upon entering into the Insurance Policy with its insured, Plaintiff William E. Jones, undertook a separate duty of good faith and fair dealing

in the performance of its Insurance Policy, including the duties of honesty and
fairness in the observance of reasonable commercial standards and the
avoidance of deception and subterfuge in the performance of its contract with
Plaintiff William E. Jones.

20. Defendant Allstate breached its duty of good faith and fair dealing by denying
Plaintiffs Jones' claim for the fire loss based upon its intentional refusal to conduct
an adequate independent investigation of Plaintiffs Jones' claim for fire loss.

21. Defendant Allstate breached its duty of good faith and fair dealing in the
performance of its contract under the Insurance Policy with Plaintiffs Jones by
deceiving them into believing that it would fairly evaluate their claim by conducting
an adequate investigation of the fire loss.

22. Defendant Allstate breached its duty of good faith and fair dealing by having
actual knowledge of the fact that there is neither reasonable justification, nor any
lawful basis to deny Plaintiffs Jones' claim for fire loss.

23. Allstate's intentional failure to conduct an adequate investigation of the fire loss to
determine whether there was any lawful basis for refusal to honor Plaintiff Jones'
claim for fire loss constitutes a breach of the implied covenant of good faith and
fair dealing.

## FOURTH CAUSE OF ACTION – FRAUD WITH KNOWLEDGE OF FALSITY OR UTTER DESREGARD AND RECKLESSNESS  REGARDING FALSITY OF ASSERTIONS MADE BY ALLSTATE

24. Plaintiffs Jones adopt by reference paragraphs one (1) through twenty-three (23)
as if fully restated herein.

25. Defendant Allstate denied Plaintiff Jones' claim for fire loss asserting in its denial letter that Plaintiff William E. Jones intentionally set the fire or had someone act at his direction to set the fire.

26. Defendant Allstate's assertions regarding the fire loss were made with knowledge of falsity or utter disregard and recklessness about their falsity regarding the cause of the fire.

27. Defendant Allstate's assertions regarding the fire loss were material to the matter at hand and were made with the intent of having Plaintiffs Jones rely upon them and Plaintiffs Jones did reasonably rely upon them, initially.

28. Plaintiffs Jones have been damaged as a result of Defendant Allstate's assertions as stated in its denial letter to Plaintiffs Jones.

29. Allstate's assertions with respect to denial of Plaintiff Jones' claim for fire loss constitute fraud.

## FIFTH CAUSE OF ACTION – FRAUD WHERE THERE WAS A DUTY TO DISCLOSE

30. Plaintiffs Jones adopt by reference paragraphs one (1) through twenty-nine (29) as if fully restated herein.

31. Defendant Allstate knowingly concealed facts material to denial of Plaintiff Jones' claim where Defendant Allstate had a duty to disclose such concealed facts, including but not limited to its internal investigation of the fire loss, the identity of any alleged agents acting on Plaintiff William E. Jones' behalf in setting the fire, refusing to provide to Plaintiffs Jones a copy of Defendant Allstate's documented findings relating to the fire loss and refusing to provide to Plaintiffs Jones a copy of his Statement Under Oath.

32. Defendant Allstate concealed facts relating to the fire loss with the intent of misleading Plaintiff Jones to rely on those facts and/or draw inferences from Defendant Allstate's concealment of facts relating to the fire loss.

33. Plaintiff Jones was justified in relying on the concealed facts and/or relying on inferences drawn from the concealment of facts and Plaintiffs Jones did in fact, so rely, initially.

34. Allstate failed to conduct an investigation and/or failed to conduct an adequate investigation of the fire loss.  Consequently, Defendant Allstate has neither a legal, nor factual basis for its assertions against Plaintiffs Jones, resulting in denial of the fire loss claim.

35. Defendant Allstate's concealment of the facts of its fire loss investigation, or lack of adequate investigation including concealment of Plaintiff William E. Jones' Statement Under Oath and other actions constitute fraud.

## CAUSATION

### A. Compensatory

36. Plaintiffs Jones adopt by reference paragraphs one (1) through thirty-five (35) as if fully restated herein.

37. As a direct and proximate result of the conduct of Allstate, Plaintiffs Jones have suffered, are suffering and will continue to suffer damages, not less than twenty-five thousand dollars ($25,000.00) and not more than the policy limits covering Plaintiffs Jones' property.

38. In addition, Plaintiffs Jones have been caused and are being caused to suffer extra-contractual damages in a sum to be determined as a result of the monetary losses they have suffered from the loss of time, comfort, and security by not receiving the proceeds from the Insurance Policy for which Allstate agreed to pay

upon evaluation of Plaintiffs Jones fire loss claim as a result of the breach of the express contact terms and the implied covenant of good faith and fair dealing on the part of Defendant Allstate.

39. In addition, Plaintiffs Jones have been caused and are being caused to suffer extra-contractual damages for humiliation, embarrassment, nervousness, and loss of self-worth because of their inability to pay the mortgage on the property subjected to the fire loss. The property has been foreclosed and the foreclosure action has been filed under Lucas County Case No. CI0201402172 *Fifth Third Mortgage Company v. William E. Jones et al.*

40. Plaintiffs Jones have been caused to suffer consequential contractual damages consisting of attorneys' fees and expenses in an amount to be determined by this Court.

**B. Exemplary/Punitive**

41. Plaintiffs Jones adopt by reference paragraphs one (1) through forty (40) as if fully restated herein.

42. The aforesaid omissions and acts of commission on the part of Defendant Allstate in breaching its Insurance Policy with Plaintiffs Jones were malicious and grossly negligent, and evidence an intentional, willful, wanton, and reckless disregard for the safety and security of others, thereby entitling Plaintiffs Jones to an award of punitive damages of and from Defendant Allstate in an amount to be determined sufficient to punish Defendant Allstate for its egregious condition and deter Defendant Allstate and others similarly situated from such conduct in the future.

WHEREFORE, Plaintiffs Jones pray for a judgment against Defendant Allstate Insurance Company as follows:

1. Declaratory Judgment finding that Plaintiffs Jones are entitled to receive compensatory damages in an amount sufficient to compensate Plaintiffs Jones for the actual compensatory damages sustained by them in an amount in excess of the minimum jurisdictional limits of this Court together with both pre-judgment and post-judgment interest; and

2. Consequential damages in an amount sufficient to compensate Plaintiffs Jones for the losses and damages sustained by them because of Defendant Allstate's breach of the express and implied covenants of the Insurance Policy in an amount in excess of the minimum jurisdictional limits of this Court together with both pre-judgment and post-judgment interest; and

3. Punitive damages in an amount sufficient to punish Defendant Allstate for its egregious conduct and to deter it and others similarly situated from such conduct in the future together with both pre-judgment and post-judgment interest; and

4. Attorneys' fees and expenses; and

5. All costs incurred herein; and

6. Any other relief so allowed but not expressly asked for herein as deemed just and proper.

Respectfully Submitted,

Chad T. Mulkey, Esq.
Anne M. Izzi, Esq.
Attorneys for Plaintiffs





Allstate.
You're in good hands.

April 1, 2014

<u>PERSONAL & CONFIDENTIAL</u>

Mr. William Jones
2469 Lawton Ave.
Toledo, Ohio 43620

RE: Insured:      William Jones
    Claim #:      0305744120
    Policy #:     980260172
    DOL:          11/11/2013
    Location:     716 Yates, Toledo, Ohio 43608
    Type of Loss: Fire

Dear Mr. Jones:

Please be advised that the Allstate Property & Casualty Company has reviewed the available information and conducted a thorough investigation of your claim of loss. Based upon the information which has been received and reviewed, the Allstate Property & Casualty Company has made a decision to respectfully deny payment and liability for your claim for the following reasons:

Under the Allstate Property & Casualty Company Homeowners Insurance Policy, the policy contains the following language, in pertinent part:

Insuring Agreement

In reliance on the information you have given us, we agree to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in the title, use or occupancy of the residence premises. (Page 4)

Misrepresentation, Fraud or Concealment



- 1 -

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance. (page 5)

## SECTION I - YOUR PROPERTY

### Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C:

We do not cover loss to the property described in **Coverage A - Dwelling Protection** or **Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** consisting of or caused by the following: (Section I Condition Paragraph C, Page 14, subparagraphs 6-8 pg.15)

6.  The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.

7.  Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

8.  Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:

    a)  may be reasonably expected to result from such acts; or
    b)  is the intended result of such acts.

    This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

As a result of their investigation, the Allstate Property & Casualty Company has concluded that either you, or someone acting at your direction, intentionally set a fire at the property located at 716 Yates, and therefore the loss is not sudden and/or accidental.

The Allstate Property & Casualty Company has also concluded that you, as an insured person, failed to take all reasonable steps to save and preserve the property when the property was endangered by the fire at 716 Yates, and that the Allstate Property & Casualty Company has concluded was intentionally set.

The Allstate Property & Casualty Company has no obligation to provide coverage under this section if you, an insured person, misrepresents material facts or circumstances relating to this insurance, and that these misrepresentations prejudiced Allstate in the investigation of this loss.

You have denied that you intentionally set fire to the property, and you deny that you had someone else intentionally set fire to the property. Allstate's investigation has concluded that the property was locked and secure when fire fighters arrived to extinguish the fire. You testified that you had possession of the only known key. You testified that you were not present at 716 Yates when the fire started. Based on the aforementioned, Allstate has concluded that you have concealed or misrepresented material facts relating to the fire loss.

The Allstate Property & Casualty Company expressly reserves its right to assert any and all other defenses which it may have to your claim, even though not specifically enumerated herein, and as they become known to Allstate or as its counsel may advise. The Allstate Property & Casualty Company does not waive or relinquish any of its rights or defenses under the policy of insurance or otherwise. The Allstate Property & Casualty Company has and will continue to require strict adherence to all of the terms and conditions of the policy of insurance.

Please note that the Allstate Property & Casualty Company hereby specifically rejects the validity of your Sworn Statement in Proof of Loss as submitted and disagrees with the information that you have set forth in that document.

Please be advised that the Allstate Property & Casualty Company Homeowners Insurance Policy contains the following term and condition:

### SECTION I - CONDITIONS

Action Against Us

No one may bring an action against us unless there has been full compliance with all policy terms. (Page 6) and continues in pertinent part:

Any action against us must be commenced within one year of the date the cause of action accrues.

Sincerely,

Victoria L. Hoenigman, FCLS
Staff Claim Service Adjuster

cc:     Michael J. Manahan, Esq.

- 3 -

NOTICE

Information from the credit report(s) we obtained pursuant to your written authorization was used in connection with our investigation of claim 0305744120 which was denied in whole or in part.

You have a right to obtain, under Section 612 of the Fair Credit Reporting Act, a free copy of the credit report(s) from the consumer reporting agency that furnished us with the report. You also have the right, under Section 611 of the fair Credit Reporting Act, to dispute with the consumer reporting agency the accuracy or completeness of any information in the credit report(s) furnished by the agency.

To take advantage of these rights, be sure to request a copy of your credit report(s) within 60 days. Please keep in mind that the consumer reporting agency did not decide to deny the claim, so it will be unable to provide you any specific reasons regarding our decision.

You may contact the consumer reporting agency at:

Trans Union National Disclosure Center
2 Baldwin Place
PO Box 1000
Chester, PA 19022
Phone: (888) - 503-0048

If you have any questions regarding this notice or our handling of this claim, please contact Victoria Hoenigman at 330-655-4845.

Jones
Denial LTR 4 FCRA
0305744120

**U.S. Postal Service**
**CERTIFIED MAIL· RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To Mr. William Jones
Street, Apt. No.; or PO Box No. 2469 Lawson Ave
City, State, ZIP+4 Toledo, Ohio 43620

7012 3490 0000 3549 4082

PS Form 3800, August 2006          See Reverse for Instructions

# RohrbachersCron
## MANAHAN TRIMBLE ZIMMERMAN CO., L.P.A.
### Attorneys at Law
### Experienced Attorneys, Personal Attention.

Matthew J. Rohrbacher
Nicholas J. Cron [2]
Michael J. Manahan [1]
J. Mark Trimble
Todd M. Zimmerman [1]
Russell R. Miller
Adam V. Nowland
Sarah V. Beaubien [1]
Matthew R. Persinger
C. Randolph Light [3]
Lynn M. Hoover [3]
Tracy B. Selis [3]

Vernon E. Rohrbacher (1920-1978)
Brent B. Nicholson (1954-2010)

[1] also admitted in Michigan
[2] also admitted in Florida
[3] of counsel

Toledo | Columbus

PNC Bank Building, 8th Floor
405 Madison Avenue, Toledo, Ohio 43604-1243
Writer's Direct Contact: (419) 248-2732
mmanahan@rcmtz.com

Telephone (419) 248-2600
Fax (419) 248-2614

http://www.rcmtz.com

August 29, 2014

**SENT BY E-MAIL &**
**REGULAR U.S. MAIL**

Chad T. Mulkey
Groth & Associates
416 N. Erie St.
Suite 100
Toledo, Ohio 43604

RE: Insured: **William Jones**
Claim #: **0305744120 - FIRE**
Policy #: **000980260172**
DOL: **11/11/2013**
Location: **716 Yates**
**Toledo, Ohio 43608**
Our File #: **2452.030**

Dear Mr. Mulkey:

I am writing to acknowledge receipt of your correspondence dated August 22, 2014, and confirm our telephone conversation of the same date regarding your representation of William Jones.

My review of the file material refreshes my recollection that Mr. Jones was not married at the time of this fire loss of November 11, 2013, and therefore, Ms. Lonas-Jones was not considered an insured at the time of this loss. While I acknowledge your representation of Candice Lonas-Jones, I am writing to confirm that under the policy of insurance, (number 000980260172), that Allstate issued to William Jones, Candice Lonas-Jones is not an insured person by definition.



- 1 -

In response to your request, I contacted Allstate and inquired as to whether they would release copies of photographs and the report of their origin and cause expert after the claim had been denied and before suit was filed. At this time, Allstate respectfully declines to produce their expert report and accompanying photographs. This is consistent with positions taken in other cases in which I have been involved. The documents requested by your client are considered to be a part of the claim file and are considered work product and privileged.

I thank you for your inquiry. If you have any questions, please contact me.

Sincerely yours,

ROHRBACHERS CRON MANAHAN
TRIMBLE & ZIMMERMAN CO., L.P.A.

Michael J. Manahan, Esq.

MJM/dw

## Chad Mulkey

| | |
|---|---|
| **From:** | Chad Mulkey |
| **Sent:** | Friday, October 17, 2014 1:42 PM |
| **To:** | mmanahan@rcmtz.com |
| **Subject:** | Re: My client, your insured, William Jones (Allstate Claim No. 0305744120) |
| **Attachments:** | Jones, Candace - Ltr to Allstate Atty - Re 2nd req for docs.pdf |

Dear Mr. Manahan,

Please kindly review the attached correspondence.  My deadline for filing suit is fast approaching based on the Insurance Policy and I would like to settle this claim without litigation.

Sincerely,

Chad T. Mulkey

Groth & Associates
Attorneys at Law
Toledo Legal Building
416 North Erie Street
Suite 100
Toledo, Ohio 43604
Phone: 419-244-8001
FAX: 419-930-3032
chadmulkey@cmulkeylaw.com

Confidentiality Notice

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.





# GROTH & ASSOCIATES
### Attorneys at Law

Stevin J. Groth
Daniel J. Sczesny
Christopher A. Zografides
James M. Perlman
Allison M. Lawrence
Steven L. Crossmock
Aaron D. Misthal
Tim A. Dugan

**Chad T. Mulkey**

416 N. Erie St., Suite 100
Toledo, Ohio 43604
(419) 244-8001
Fax: (419) 930-3032
Mobile (419) 810-7022
Email: chadmulkey@cmulkeylaw.com
Cmulkeylaw.com
Grothlaw.com

*David L. Petitjean
John W. Yerman
Timothy F. Braun
Chad T. Mulkey
Jevne C. Meader
**Martin D. Slavens
Anne M. Izzi

Of Counsel

Offices in Toledo, Bowling Green & Fremont, Ohio

*Also Licensed in Michigan
** Licensed in California

October 17, 2014

**SENT VIA E-MAIL &**
**SENT VIA REGULAR U.S. MAIL**

Mike Manahan, Esq.
Manahan Trimble Zimmerman Co., L.P.A.
PNC Bank Building, 8th Floor
405 Madison Avenue
Toledo, Ohio 43604-1243

    Re:  My insured, William Jones, Allstate Claim No. 0305744120 MVH (Fire Loss at 716 Yates St., Toledo, Ohio 43608 on November 11, 2013)

Dear Mr. Manahan,

    I received your letter to me dated August 29, 2014, wherein you wrote that Allstate declines to produce their report and accompanying photographs relating to the fire loss.  In good faith, I am respectfully requesting the facts and any and all information on which Allstate is relying to deny paying a claim for fire loss covered under it's policy.

    So far, it appears Allstate is being unduly and needlessly uncooperative in its refusal to provide requested information.  As per my last letter, I am specifically and respectfully requesting all of Allstate's photographs and  investigative report of the fire.  If Allstate has a reasonable justification for denial of its claim of my client's fire loss, then it should have no problem producing the requested information in good faith.

    Furthermore, I am respectfully requesting copies of any and all correspondence between Allstate and it's insured, William Jones, relating to the fire loss.  This request includes letters of denial, records of reimbursement and any other correspondence.



PLAINTIFF'S EXHIBIT

I am also requesting any correspondence between Allstate's investigator(s), claims adjusters and other employees and/or agents of Allstate and Toledo Police Department, as well as Toledo Fire and Rescue Department relating to this claim for fire loss.  It appears that my deadline for filing a breach of contract and bad faith claim is approaching under the terms of my client's insurance policy.

I am looking forward to working with Allstate in a spirit of friendly and respectful cooperation regarding this claim.  I have attached my first letter as well as your response to that letter, in this correspondence.

Please respond to this letter within 10 days of receipt, or I will be forced to file suit.

Very truly yours,

**GROTH & ASSOCIATES**

Chad T. Mulkey

enclosures

# Rohrbachers Cron

## MANAHAN TRIMBLE ZIMMERMAN CO. L.P.A.
### Attorneys at Law
### Experienced Attorneys. Personal Attention.

Matthew J. Rohrbacher
Nicholas J. Cron [2]
Michael J. Manahan [1]
J. Mark Trimble
Todd M. Zimmerman [1]
Russell R. Miller
Adam V. Nowland
Sarah V. Beaubien [1]
Matthew R. Persinger
C. Randolph Light [3]
Lynn M. Hoover [3]
Tracy B. Selis [3]

Vernon E. Rohrbacher (1920-1978)
Brent B. Nicholson (1954-2010)

[1] also admitted in Michigan
[2] also admitted in Florida
[3] of counsel

Telephone (419) 248-2600
Fax (419) 248-2614

http://www.rcmtz.com

Toledo | Columbus

PNC Bank Building, 8th Floor
405 Madison Avenue, Toledo, Ohio 43604 -1243
Writer's Direct Contact: (419) 248-2732
mmanahan@rcmtz.com

August 29, 2014

**SENT BY E-MAIL &
REGULAR U.S. MAIL**

Chad T. Mulkey
Groth & Associates
416 N. Erie St.
Suite 100
Toledo, Ohio 43604

RE:    Insured:     **William Jones**
       Claim #:     **0305744120 - FIRE**
       Policy #:    **000980260172**
       DOL:         **11/11/2013**
       Location:    **716 Yates**
                    **Toledo, Ohio  43608**
       Our File #:  **2452.030**

Dear Mr. Mulkey:

I am writing to acknowledge receipt of your correspondence dated August 22, 2014, and confirm our telephone conversation of the same date regarding your representation of William Jones.

My review of the file material refreshes my recollection that Mr. Jones was not married at the time of this fire loss of November 11, 2013, and therefore, Ms. Lonas-Jones was not considered an insured at the time of this loss. While I acknowledge your representation of Candice Lonas-Jones, I am writing to confirm that under the policy of insurance, (number 000980260172), that Allstate issued to William Jones, Candice Lonas-Jones is not an insured person by definition.

In response to your request, I contacted Allstate and inquired as to whether they would release copies of photographs and the report of their origin and cause expert after the claim had been denied and before suit was filed. At this time, Allstate respectfully declines to produce their expert report and accompanying photographs. This is consistent with positions taken in other cases in which I have been involved. The documents requested by your client are considered to be a part of the claim file and are considered work product and privileged.

I thank you for your inquiry. If you have any questions, please contact me.

Sincerely yours,

ROHRBACHERS CRON MANAHAN
TRIMBLE & ZIMMERMAN CO., L.P.A.

Michael J. Manahan, Esq.

MJM/dw

- 2 -



GROTH & ASSOCIATES
Attorneys at Law

Stevin J. Groth
Daniel J. Sczesny
Christopher A. Zografides
James M. Perlman
Allison M. Lawrence
Steven L. Crossmock
Aaron Misthal
Tim A. Dugan

**Chad T. Mulkey**
416 N. Erie St., Suite 100
Toledo, Ohio 43604
(419) 244-8001
Fax: (419) 930-3032
Mobile (419) 810-7022
Email: chadmulkey@cmulkeylaw.com
Cmulkeylaw.com
Grothlaw.com

*David L. Petitjean
John W. Yerman
Timothy F. Braun
Chad T. Mulkey
Of Counsel

*Also Licensed in Michigan

Offices in Toledo, Bowling Green & Fremont, Ohio

August 22, 2014

Mike Manahan, Esq.
Manahan Trimble Zimmerman Co., L.P.A.
PNC Bank Building, 8th Floor
405 Madison Avenue
Toledo, Ohio 43604-1243

Re:  My insured, William Jones, Allstate Claim No. 0305744120 MVH (Fire Loss)

Dear Mr. Manahan,

It was a pleasure speaking to you on the phone today.  Please allow this letter to serve as an official letter of representation on behalf of my clients William and Candace Jones regarding the above-mentioned claim number.

Per our phone conversation, if you could kindly contact Allstate to inquire as to Allstate's willingness to provide photographs to me which is in your client's possession in connection with fire loss that occurred on the property located at 716 Yates St., Toledo, OH 43608.

I would like to have the photographs reviewed by an arson expert who, based on that review, would determine whether the fire was intentionally caused.  If so, that will go along way to quickly resolving this case.  I don't want to have to file a declaratory judgment just to get the photos, only to learn that there is not a claim worth pursuing, after consulting my expert.

Please let me know if you need anything further at this time as it relates to my representation, or anything else.  I really do not intend to waste time if there is no claim worth pursing.

Very truly yours,

GROTH & ASSOCIATES

Chad T. Mulkey

# RohrbachersCron

## MANAHAN TRIMBLE ZIMMERMAN CO. L.P.A.
### Attorneys at Law
### Experienced Attorneys. Personal Attention.

Matthew J. Rohrbacher
Nicholas J. Cron [2]
Michael J. Manahan [1]
J. Mark Trimble
Todd M. Zimmerman [1]
Russell R. Miller
Sarah V. Beaubien [1]
Matthew R. Persinger
C. Randolph Light [3]
Lynn M. Hoover [3]
Tracy B. Selis [3]

Vernon E. Rohrbacher (1920-1978)
Brent B. Nicholson (1954-2010)

[1] also admitted in Michigan
[2] also admitted in Florida
[3] of counsel

Telephone (419) 248-2600
Fax (419) 248-2614

http://www.rcmtz.com

Toledo | Columbus

PNC Bank Building, 8th Floor
405 Madison Avenue, Toledo, Ohio 43604 -1243
Writer's Direct Contact: (419) 248-2732
mmanahan@rcmtz.com

October 22, 2014

**SENT BY E-MAIL &**
**REGULAR U.S. MAIL**

Chad T. Mulkey
Groth & Associates
416 N. Erie St.
Suite 100
Toledo, Ohio 43604

RE:   Insured:      **William Jones**
      Claim #:      **0305744120 - FIRE**
      Policy #:     **000980260172**
      DOL:          **11/11/2013**
      Location:     **716 Yates**
                    **Toledo, Ohio  43608**
      Our File #:   **2452.030**

Dear Mr. Mulkey:

I am in receipt of your correspondence dated October 17, 2014.  I have had occasion to review the content of your correspondence with my client, the Allstate Property & Casualty Insurance Company.

As is set forth in my correspondence to you dated August 29, 2014, the documentation that you have requested in your October 17, 2014 correspondence, is documentation that Allstate considers to be both confidential and privileged work product, as well as subject to, in part, the attorney/client privilege.



Primerus



PLAINTIFF'S
EXHIBIT

In your correspondence, you assert that Allstate is being "unduly and needlessly uncooperative". You also contend that "If Allstate had reasonable justification for denial of its claim of my client's fire loss, then it should have no problem producing the requested information in good faith". With all due respect, you are confusing the issue of "good faith" with Allstate's obligation to provide you with claim file material pre-suit. As to the issue of good faith, I am confident that Allstate had reasonable justification for the denial of your client's claim.

In regard to the issue of the pre-suit production of claim file material, I am unaware of legal authority that requires Allstate to provide you, or your client, with confidential claim file material prior to the onset of litigation. If you have case law that supports your request, I would ask that you please forward it to my attention so that I can advise my client.

Without waiving Allstate's rights to maintain all claim file material as confidential, Allstate understands that your client is currently incarcerated and therefore may not be able to provide you with documentation that he either forwarded to Allstate, or that Allstate forwarded to him. As a result, and again, specifically reserving Allstate's rights, they have agreed to provide you with correspondence and documentation that was either sent to your client, or supplied by your client in response to document requests set forth in my initial correspondence to your client dated December 6, 2013, a copy of which is also enclosed.

Please be advised that this correspondence does not, nor should it be construed by either your or your client, as in any way waiving the attorney/client or work product privilege.

I am including herewith, the letter of denial that was forwarded to your client dated April 1, 2014. Please reference the denial letter for both the basis for denial of Mr. Jones' claim, as well as in regard to the expiration of the contractual statute of limitations. I have also enclosed the applicable Allstate policy of insurance for your review.

In regard to the remaining requests contained in your correspondence dated October 17, 2014, please be advised that the NFIRS report from the Toledo Fire Department is available for your review by requesting the document from the Toledo Fire and Rescue Department located at 545 Huron Street., Toledo, Ohio 43604. Records from the Toledo Police Department relating to this incident, if applicable, are available from the Toledo Police Department Record Bureau at 525 North Erie Street, Toledo, Ohio 43604.

In summary, I look forward to any applicable case law that you may present that would change Allstate's position. If you have any additional questions, please contact me.

Sincerely yours,

ROHRBACHERS CRON MANAHAN
TRIMBLE & ZIMMERMAN CO., L.P.A.

Michael J. Manahan, Esq.

MJM/dw
Enclosures
Cc:    Vicki Hoenigman/Allstate Insurance

- 2 -

Page 1 of 1

## Chad Mulkey

| | |
|---|---|
| **From:** | Chad Mulkey |
| **Sent:** | Thursday, October 23, 2014 11:28 AM |
| **To:** | mmanahan@rcmtz.com |
| **Subject:** | Re: Jones, William: Fire Loss (Allstate Claim No. 0305744120) |
| **Attachments:** | Jones, William - Ltr to Allstate Atty - 3rd Request.pdf |

Dear Mr. Manahan,

Please find attached to this correspondence my response to your correspondence dated October 22, 2014. I look forward to hearing from you. At the very least, I would like a copy of all my client's statements under oath, as these are not privileged, since my client was involved in giving the statement. Furthermore, I am not asking for a copy of the NFIRS report from the Toledo Fire Department, nor the Records from the Toledo Police Department, but I am asking for the correspondence between Allstate and those agencies, as clearly stated in my letter to you dated October 17, 2014.

Sincerely,

Chad T. Mulkey

Groth & Associates
Attorneys at Law
Toledo Legal Building
416 North Erie Street
Suite 100
Toledo, Ohio 43604
Phone: 419-244-8001
FAX: 419-930-3032
chadmulkey@cmulkeylaw.com

Confidentiality Notice

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.



11/6/2014



**GROTH&ASSOCIATES**
Attorneys at Law

Stevin J. Groth
Daniel J. Sczesny
Christopher A. Zografides
James M. Perlman
Allison M. Lawrence
Steven L. Crossmock
Aaron D. Misthal
Tim A. Dugan

**Chad T. Mulkey**
416 N. Erie St., Suite 100
Toledo, Ohio 43604
(419) 244-8001
Fax: (419) 930-3032
Mobile (419) 810-7022
Email: chadmulkey@cmulkeylaw.com
Cmulkeylaw.com
Grothlaw.com

†David L. Petitjean
John W. Yerman
Timothy F. Braun
Chad T. Mulkey
Jevne C. Meader
**Martin D. Slavens
Anne M. Izzi

Of Counsel

Offices in Toledo, Bowling Green & Fremont, Ohio

†Also Licensed in Michigan
** Licensed in California

October 23, 2014

**SENT VIA E-MAIL &**
**SENT VIA REGULAR U.S. MAIL**

Mike Manahan, Esq.
Manahan Trimble Zimmerman Co., L.P.A.
PNC Bank Building, 8th Floor
405 Madison Avenue
Toledo, Ohio 43604-1243

     Re:  My insured, William Jones, Allstate Claim No. 0305744120 MVH (Fire Loss at 716 Yates St.; Toledo, Ohio 43608 on November 11, 2013)

Dear Mr. Manahan,

     I received your letter to me dated October 22, 2014, wherein you wrote that you were, "confident that Allstate had reasonable justification for the denial of your client's claim." Please kindly share the investigative facts which support your conclusion.

     Your client continues to fail to comply with my reasonable request in my correspondence dated October 17, 2014 for information regarding the fire loss. Allstate continues to refuse to provide documentation, including photographs from its investigation as to the fire loss. If Allstate is confident that it has reasonable justification to deny this claim then allow me to review Allstate's findings so that I can properly advise my client as to the lack of merit to his case. By failing to provide a copy of its report, your client is guaranteeing a lawsuit which could be avoided.

     I have attached a copy of the docket and Order where the State of Ohio dismissed its claim for arson, as a result of the fire loss to this property.(See attached docket and Order of Dismissal attached to this correspondence).  However, Allstate's claim denial letter to my



PLAINTIFF'S
EXHIBIT

client dated April 1, 2014 stated that, "either you, or someone acting at your direction, intentionally set a fire at the property located at 716 Yates, and therefore the loss is not sudden and/or accidental." (See Denial Letter attached to this correspondence).

Essentially, Allstate in its denial letter is accusing my client of arson, where the State dismissed the case. This denial sets up a prima facie showing of bad faith on your client's part in denying its claim for the fire loss. Allstate's concealment of its investigative report and photographs of the fire loss, is further setting up a prima facie showing of bad faith on your client's part for its denial of this fire loss claim.

I am now asking for Allstate to produce any and all of my client's statements under oath given to Allstate, Allstate's investigative file of the fire loss, including photographs, Allstate's correspondence with any of the criminal investigators involved with my client's dismissed arson indictment and your correspondence and/or recommendation, if any, to Allstate regarding the denial of this claim.

If my arson expert concurs with Allstate's investigative report, then I will advise my client to drop the impending suit. The only way I can properly advise my client is if I have a copy of a report/photographs for my arson expert to review.

As for providing you case law, this is not a Motion to Compel, but merely a friendly and collegial letter trying to resolve this fire loss in a pre-suit format, to save both our clients the cost of litigation. I trust you can do your own legal research as it relates to a prima facie showing of insurance claims for bad faith on fire loss and access to an insurance company's claims file and other issues involving a potential lawsuit in this case. You can start with *Zoppo v. Homestead Ins. Co.* and *Wagner v. Midwestern.*

If you are confident that Allstate had good faith basis to deny the claim, then there should be no further effort to purposefully and willfully conceal the investigative report, photographs and other information that I asked to review. This refusal and concealment of Allstate's investigation further supports a bad faith denial of the fire loss.

I cannot compel you or your client to provide the information, but by failing to provide it, you and your client are guaranteeing a lawsuit and the failure arguably adds to a claim of breach of contract and bad faith on your client's part in denying a claim for this fire loss. The requested information will be discoverable, once I file suit.

Please respond to this letter within 7 days of receipt, or I will have no choice but to file suit.

Very truly yours,

GROTH & ASSOCIATES

Chad T. Mulkey

enclosures

10/22/2014                          Clerk of Courts Docket

Public Documents           LUCAS COUNTY COURT OF COMMON PLEAS          TIME: 4:57:08 PM
                                  J. BERNIE QUILTER, CLERK                     DATE: 10/22/2014
                                      700 ADAMS STREET
                                         TOLEDO, OHIO

CASE:   G-4801  -CR  -201401018-
                     000
TITLE:   S/O V WILLIAM JONES
JUDGE: MICHAEL R GOULDING
FILING DATE:  1/3/2014               CASE TYPE: CR      CRIMINAL

MONETARY AMOUNT:                                       DOCKET/PAGE:
ORIGINAL COURT:                                           TAX TYPE:
PREVIOUS CASE NUMBER:                      STATE OF OHIO NUMBER:

| Party | Counsel | Prosecutor |
|-------|---------|------------|
| DEFENDANT 1: | | |
| JONES WILLIAM ERIC | RONNIE L. | J CHRISTOPHER ANDERSON |
| 2469 LAWTON AVE | WINGATE | |
| TOLEDO, OH 43620 | 41924338003 | |
| Alias(es) | 1119 ADAMS | |
| JONES WILLIAM | STREET | |
| | TOLEDO, OH 43624 | |

| COUNT | PARTY | DESCRIPTION | ABBREV. |
|-------|-------|-------------|---------|
| 1 | (D-1)JONES WILLIAM ERIC | AGGRAVATED ARSON | F1 |

| DATE | SEQ | EVENT |
|------|-----|-------|
| 1/3/2014 | 4 | Title : OPN:INDICTMENT FILED<br>AGG ARSON<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/8/2014 | 1 | Title : FRM:CRM SUM-INDICT/PRNT EF5/13<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/8/2014 | 2 | Title : JRE:EXISTING PENDING CASE<br>CR13-2469<br>PARTY : - |
| 1/8/2014 | 3 | Title : OPN:TOLEDO TRANSCRIPT FILED<br>AGGRAVATED ARSON SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM<br>TO ANY PERSON OTHER THAN SUSPECT<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/8/2014 | 4 | Title : BND:TRANSCRIPT BOND<br>SURETY BOND ISSUED BY MUNICIPAL COURT<br>$50,000.00 POSTED BY ANTHONY HORN POWER #510534221-2<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/8/2014 | 5 | Title : MIS:CLERKS OFFICE NOTES<br>TRANSCRIPT WAS RECEIVED AFTER GRAND JURY INDICTMENT OF<br>1/3/14.<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/9/2014 | 1 | Title : HRG:ARRAIGNMENT SET<br>January 24, 2014 at 9:30 a.m.<br>PARTY : D1 - JONES WILLIAM ERIC |
| 1/24/2014 | 1 | Title : MIS:CASE CONT AT DEF REQUEST |

10/22/2014                                    Clerk of Courts Docket

                    72-000028243 issued by 226 ()
                    Dated January 24, 2014. Digital Reporter JESSICA HANCOCK
                    ordered. State of Ohio: J. CHRISTOPHER ANDERSON. RONNIE
                    L. WINGATE present on behalf of the defendant but not
                    retained. Defendant, WILLIAM ERIC JONES present in court.
                    Matter called for arraignment. Pursuant to the request of
                    defendant matter rescheduled for arraignment on February
                    5, 2014 at 2:00 p.m. to secure counsel.
                    Bond is continued.
                    JUDGE MICHAEL R GOULDING
                    PARTY : D1 - JONES WILLIAM ERIC

1/24/2014   3   Title : RTN:SHERIFFS SUMMONS RETURNED
                    SERVED ON 1/24/14
                    PARTY : D1 - JONES WILLIAM ERIC

1/27/2014   1   Title : MTN:PRETRIAL INSPECTION
                    FILED BY PROSECUTOR
                    AND REQUEST FOR IMMUNITY
                    PARTY : D1 - JONES WILLIAM ERIC

1/27/2014   2   Title : EVT:J.E. FILED & JOURNALIZED
                    911 IMMUNITY
                    E JOURNALIZED 1-29-14
                    PARTY : D1 - JONES WILLIAM ERIC

1/27/2014   3   Title : EVT:ORDER FILE & JOURN EFF6/13
                    911 SUBPOENA
                    PARTY : D1 - JONES WILLIAM ERIC

1/27/2014   4   Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                    ARRAIGNMENT RESCHEDULED
                    E JOURNALIZED 1-29-14
                    PARTY : D1 - JONES WILLIAM ERIC

1/29/2014   1   Title : SUBPOENA TO PRODUCE EVIDENCE
                    ISSUED TO:
                    Toledo Police Department Communications Section
                    Lucas County Emergency Services Building
                    2144 Monroe Street, Toledo, Ohio, 43604
                    PARTY : D1 - JONES WILLIAM ERIC

1/30/2014   1   Title : MTN:FOR DISCOVERY FILED
                    PARTY : D1 - JONES WILLIAM ERIC

1/30/2014   2   Title : MTN:BILL OF PARTICULARS FILED
                    PARTY : D1 - JONES WILLIAM ERIC

2/3/2014   1   Title : MTN:STATES RESPONSE FILED
                    FILED BY PROSECUTOR
                    TO REQUEST FOR BILL OF PARTICULARS
                    PARTY : D1 - JONES WILLIAM ERIC

2/3/2014   2   Title :-MTN: DISCOVERY RESPONSE FILED
                    FILED BY PROSECUTOR
                    PARTY : D1 - JONES WILLIAM ERIC

2/5/2014   1   Title : ORD:CASE CONTINUED
                    73-000000109 issued by 185 ()
                    At the request of the Court and for good cause shown,
                    arraignment set for February 5, 2014 is vacated due to

10/22/2014                                    Clerk of Courts Docket

closing of the courthouse because of inclement weather.
Matter rescheduled for February 12, 2014 at 2:00p.m.
Bond is ordered continued.
Dated:
JUDGE MICHAEL R GOULDING

Case Number: G-4801-CR-0201401018-000
STATE OF OHIO V. WILLIAM ERIC JONES
PRAECIPE
TO THE CLERK:
Within three days of journalization, please serve upon all
parties notice of the judgment in a manner prescribed by
Civ. R. 5(B) and note the service in the appearance docket
(see below).
Dated:
JUDGE MICHAEL R GOULDING
Lucas County Prosecutors Office
Attn: J CHRISTOPHER ANDERSON
700 Adams Street
Toledo, OH 43604
Lucas County Prosecutors Office
Attn: Victim/Witness Department
700 Adams Street
Toledo, OH 43604
RONNIE L. WINGATE
1119 ADAMS STREET
TOLEDO, OH 43624
PARTY : D1 - JONES WILLIAM ERIC

2/5/2014      3     Title : EVT:ORDER FILE & JOURN EFF6/13
                    ARRAIGNMENT VACATED & RESCHEDULED
                    E JOURNALIZED 2-10-14
                    PARTY : D1 - JONES WILLIAM ERIC

2/12/2014     1     Title : PLD:SUPPLEMENTAL
                    FILED BY PROSECUTOR
                    TO DISCOVERY
                    PARTY : D1 - JONES WILLIAM ERIC

2/12/2014     2     Title : ARR HELD AND COUNSEL RETAINED
                    769-000015644 issued by 185 ()
                    February 12, 2014, Digital Reporter JESSICA HANCOCK ,
                    Assistant Prosecutor Chris Anderson, Attorney RONNIE L.
                    WINGATE retained by Defendant, and Defendant, WILLIAM ERIC
                    JONES present in court.
                    Defendant acknowledged receipt of copy of indictment,
                    waived any defects as to time, place or manner of service,
                    and waived its reading in open court. Defendant entered a
                    plea of Not Guilty.
                    Matter set for trial on March 24, 2014 at 1:30p.m. Matter
                    set for pre-trial on March 21, 2014 at 9:30a.m.
                    Bond continued.
                    JUDGE MICHAEL R GOULDING
                    PARTY : D1 - JONES WILLIAM ERIC

2/12/2014     4     Title : HRG:PRETRIAL SET
                    March 21, 2014 at 9:30a.m.
                    PARTY : D1 - JONES WILLIAM ERIC

10/22/2014                                 Clerk of Courts Docket

2/13/2014    2    Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                        ARRAIGNMENT
                        E JOURNALIZED 2-14-14
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/21/2014    1    Title : HRG:PRETRIAL SET
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/21/2014    2    Title : HRG:PRETRIAL HEARING HELD
                        771-000021829 issued by 185 ()
                        March 21, 2014. Digital Reporter JESSICA HANCOCK ,
                        Assistant Prosecutor Claudia Ford, RONNIE L. WINGATE on
                        behalf of the Defendant, and Defendant WILLIAM ERIC JONES
                        present in court.
                        Matter called for Pretrial Hearing. Pretrial held.
                        Matter set for pretrial on March 24, 2014 at 1:30p.m.
                        Trial date of March 24, 2014 is vacated.
                        Bond is continued.
                        JUDGE MICHAEL R GOULDING
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/21/2014    4    Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                        PRETRIAL HEARING
                        E JOURNALIZED 3-24-14
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/24/2014    1    Title : HRG:PRETRIAL HEARING HELD
                        771-000021842 issued by 185 ()
                        March 24, 2014. Digital Reporter JESSICA HANCOCK ,
                        Assistant Prosecutor Chris Anderson, RONNIE L. WINGATE on
                        behalf of the Defendant, and Defendant WILLIAM ERIC JONES
                        present in court.
                        Matter called for Pretrial Hearing. Pretrial held.
                        Matter set for pretrial on March 26, 2014 at 2:00p.m.
                        Bond is continued.
                        JUDGE MICHAEL R GOULDING
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/25/2014    1    Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                        PRETRIAL HEARING
                        E JOURNALIZED 3-26-14
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/26/2014    1    Title : MIS:CASE CONT AT DEF REQUEST
                        72-000029265 issued by 185 ()
                        Dated March 26, 2014. Digital Reporter JESSICA HANCOCK
                        ordered. State of Ohio; Chris Anderson. RONNIE L. WINGATE
                        present on behalf of the defendant. Defendant, WILLIAM
                        ERIC JONES present in court.
                        Matter called for pre-trial. Pursuant to the request of
                        defendant matter rescheduled for pre-trial on April 16,
                        2014 at 2:00p.m.
                        Bond is continued.
                        JUDGE MICHAEL R GOULDING
                        **PARTY : D1 - JONES WILLIAM ERIC**

3/26/2014    3    Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                        PRETRIAL RESCHEDULED
                        E JOURNALIZED 3-27-14

10/22/2014                                     Clerk of Courts Docket

                         PARTY : D1 - JONES WILLIAM ERIC

4/16/2014    1    Title : ORD:CASE NOLLIED
                     623-000006877 issued by 185 ()
                     April 16, 2014. Digital Reporter JESSICA HANCOCK ,
                     Assistant Prosecutor Chris Anderson, RONNIE L. WINGATE on
                     behalf of the Defendant, and Defendant WILLIAM ERIC JONES
                     present in court.
                     Nolle prosequi entered at request of State for good cause
                     shown. Defendant ordered discharged on this case only
                     Bond Ordered released.
                     JUDGE MICHAEL R GOULDING
                     PARTY : D1 - JONES WILLIAM ERIC

4/17/2014    1    Title : EVT:ORD FILE/JOUR $ EFF 6/1/13
                     NOLLE
                     E JOURNALIZED 4-18-14
                     PARTY : D1 - JONES WILLIAM ERIC

Disclaimer : The public record information available here reflects the docket entries and journals required by Ohio law to be kept by the Lucas County Clerk of the Court of Common Pleas. This information reflects the actual documents filed and kept at the Clerk of Courts Legal Division, located in the Lucas County Courthouse, at Adams and Erie Streets in Toledo, Ohio, 43624. The data entry, though generally deemed reliable, cannot be guaranteed. The information may appear on the Internet Docket before the entry is actually signed and journalized. Of course the proposed action is official only when signed and journalized. In no event shall the Lucas County Clerk of the Court of Common Pleas, or any other Lucas County department, agency, or official be held liable for damage of any nature, direct or indirect, arising from the use of this Internet product; including loss of profits, loss of savings, or other incidental or consequential damages.

FILED
LUCAS COUNTY

2014 APR 17 AM 11: 13

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | * | CASE NO: |
| Plaintiff, | * | G-4801-CR-0201401018-000 |
| | * | |
| v. | * | ORDER |
| | * | |
| WILLIAM ERIC JONES | * | |
| Defendant. | * | JUDGE MICHAEL R GOULDING |
| | * | |
| | * | |

\* \* \* \* \* \* \*

April 16, 2014. Digital Reporter JESSICA HANCOCK , Assistant Prosecutor Chris Anderson, RONNIE L. WINGATE on behalf of the Defendant, and Defendant WILLIAM ERIC JONES present in court.

Nolle prosequi entered at request of State for good cause shown. Defendant ordered discharged on this case only

Bond Ordered released.

/JUDGE MICHAEL R GOULDING

E-JOURNALIZED

G-4801-CR-0201401018-000-WILLIAM ERIC JONES-April 16, 2014-523 - 000009877- Page 1  APR 1 8 2014





**Allstate**

You're in good hands.

April 1, 2014

<u>PERSONAL & CONFIDENTIAL</u>

Mr. William Jones
2469 Lawton Ave.
Toledo, Ohio 43620

RE:   Insured:   William Jones
         Claim #:   0305744120
         Policy #:   980260172
         DOL:      11/11/2013
         Location:  716 Yates, Toledo, Ohio 43608
         Type of Loss: Fire

Dear Mr. Jones:

Please be advised that the Allstate Property & Casualty Company has reviewed the available information and conducted a thorough investigation of your claim of loss. Based upon the information which has been received and reviewed, the Allstate Property & Casualty Company has made a decision to respectfully deny payment and liability for your claim for the following reasons:

Under the Allstate Property & Casualty Company Homeowners Insurance Policy, the policy contains the following language, in pertinent part:

Insuring Agreement

In reliance on the information you have given us, we agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in the title, use or occupancy of the residence premises. (Page 4)

Misrepresentation, Fraud or Concealment

- 1 -

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance. (page 5)

## SECTION I - YOUR PROPERTY

### Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C:

We do not cover loss to the property described in **Coverage A - Dwelling Protection** or **Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** consisting of or caused by the following: (Section I Condition Paragraph C, Page 14, subparagraphs 6-8 pg.15)

6. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we cover**.

7. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

8. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:

   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

As a result of their investigation, the Allstate Property & Casualty Company has concluded that either you, or someone acting at your direction, intentionally set a fire at the property located at 716 Yates, and therefore the loss is not sudden and/or accidental.

The Allstate Property & Casualty Company has also concluded that you, as an insured person, failed to take all reasonable steps to save and preserve the property when the property was endangered by the fire at 716 Yates, and that the Allstate Property & Casualty Company has concluded was intentionally set.

The Allstate Property & Casualty Company has no obligation to provide coverage under this section if you, an insured person, misrepresents material facts or circumstances relating to this insurance, and that these misrepresentations prejudiced Allstate in the investigation of this loss.

You have denied that you intentionally set fire to the property, and you deny that you had someone else intentionally set fire to the property. Allstate's investigation has concluded that the property was locked and secure when fire fighters arrived to extinguish the fire. You testified that you had possession of the only known key. You testified that you were not present at 716 Yates when the fire started. Based on the aforementioned, Allstate has concluded that you have concealed or misrepresented material facts relating to the fire loss.

The Allstate Property & Casualty Company expressly reserves its right to assert any and all other defenses which it may have to your claim, even though not specifically enumerated herein, and as they become known to Allstate or as its counsel may advise. The Allstate Property & Casualty Company does not waive or relinquish any of its rights or defenses under the policy of insurance or otherwise. The Allstate Property & Casualty Company has and will continue to require strict adherence to all of the terms and conditions of the policy of insurance.

Please note that the Allstate Property & Casualty Company hereby specifically rejects the validity of your Sworn Statement in Proof of Loss as submitted and disagrees with the information that you have set forth in that document.

Please be advised that the Allstate Property & Casualty Company Homeowners Insurance Policy contains the following term and condition:

### SECTION I - CONDITIONS

#### Action Against Us

No one may bring an action against us unless there has been full compliance with all policy terms. (Page 6) and continues in pertinent part:

Any action against us must be commenced within one year of the date the cause of action accrues.

Sincerely,

Victoria L. Hoenigman, FCLS
Staff Claim Service Adjuster

cc:     Michael J. Manahan, Esq.

NOTICE

Information from the credit report(s) we obtained pursuant to your written authorization was used in connection with our investigation of claim 0305744120 which was denied in whole or in part.

You have a right to obtain, under Section 612 of the Fair Credit Reporting Act, a free copy of the credit report(s) from the consumer reporting agency that furnished us with the report. You also have the right, under Section 611 of the fair Credit Reporting Act, to dispute with the consumer reporting agency the accuracy or completeness of any information in the credit report(s) furnished by the agency.

To take advantage of these rights, be sure to request a copy of your credit report(s) within 60 days. Please keep in mind that the consumer reporting agency did not decide to deny the claim, so it will be unable to provide you any specific reasons regarding our decision.

You may contact the consumer reporting agency at:

Trans Union National Disclosure Center
2 Baldwin Place
PO Box 1000
Chester, PA 19022
Phone: (888) - 503-0048

If you have any questions regarding this notice or our handling of this claim, please contact Victoria Hoenigman at 330-655-4845.

Jones
denial Ltr 4 FCRA
0305744120

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Mr William Jones
Street, Apt. No.; or PO Box No. 2469 Lawton Ave
City, State, ZIP+4 Toledo, Ohio 43620

7022 1640 0000 3549 4082

PS Form 3800, August 2006    See Reverse for Instructions



# Rohrbachers Cron
## MANAHAN TRIMBLE ZIMMERMAN CO., L.P.A.
### Attorneys at Law
### Experienced Attorneys, Personal Attention.

Matthew J. Rohrbacher
Nicholas J. Cron [2]
Michael J. Manahan [1]
J. Mark Trimble
Todd M. Zimmerman [1]
Russell R. Miller
Sarah V. Beaublen [1]
Matthew R. Persinger
C. Randolph Light [3]
Lynn M. Hoover [3]
Tracy B. Sells [3]

Vernon E. Rohrbacher (1920-1978)
Brent B. Nicholson (1954-2010)

[1] also admitted in Michigan
[2] also admitted in Florida
[3] of counsel

Telephone (419) 248-2600
Fax (419) 248-2614

http://www.rcmtz.com

Toledo | Columbus

PNC Bank Building, 8th Floor
405 Madison Avenue, Toledo, Ohio 43604 -1243
Writer's Direct Contact: (419) 248-2732
mmanahan@rcmtz.com

October 27, 2014

**SENT VIA E-MAIL AND ORDINARY MAIL**
Chad T. Mulkey
Groth & Associates
416 N. Erie St.
Suite 100
Toledo, Ohio 43604

RE: Insured:   **William Jones**
    Claim #:    **0305744120 - FIRE**
    Policy #:   **000980260172**
    DOL:        **11/11/2013**
    Location:   **716 Yates**
                **Toledo, Ohio  43608**

    Our File #:  2452.030

Dear Mr. Mulkey:

I have received and reviewed your correspondence dated October 23, 2014.  Pursuant to your request, I have also taken the opportunity to discuss the content of your correspondence, once again, with Allstate.

I would note at the outset, that my correspondence dated October 22, 2014, was not intended to cause agitation or escalate the rhetoric regarding your request.  I was only inviting you to provide me with legal support of which I may have been previously unaware for your position. I note that you have come to the conclusion that your client does not have legal support to require Allstate to provide his claim file to him, pre suit.  I would briefly note that your term "fail" implies a duty that Allstate would have to your client to refrain from "concealing" its "investigative report and photographs of the fire loss".  We can now agree that there is no legal obligation to provide the investigative file material, and hence, those terms are not applicable to this situation.  I have so advised Allstate and they have informed me that their position remains as set forth in my previous correspondence to you dated August 29th, 2014 and October 22, 2014.

PLAINTIFF'S
EXHIBIT

In further response to the content of multiple paragraphs in your correspondence of October 23, 2014 relating to the Toledo fire investigation and indictment, Allstate conducted a separate and independent investigation of your client's claim of loss due to fire. Allstate complied with the requirements of Section 3999.31 of the Ohio Revised Code in providing requested documentation to the Toledo Fire Investigation Unit. Allstate was not consulted about the indictment. Allstate did not advise the Lucas County Prosecuting Attorney's office as to their decision to indict, and subsequently dismiss, their charge of arson. Likewise, neither the Toledo Fire Investigative Unit nor the Lucas County Prosecuting Attorney, participated in Allstate's decision as to whether your client breached material terms and conditions of the contract of insurance. Again, I refer you to Allstate's denial letter for the basis of Allstate's decision.

Allstate acknowledges your position that you would like to evaluate the merits of your client's claim prior to going through the time and expense of filing a lawsuit. Since we have concluded that there is no legal obligation for them to do so, Allstate's position remains as set forth in my correspondence to you dated August 29, 2014 and October 22, 2014. Since there is no legal obligation to provide you with the documentation you request, Allstate's refusal to provide you with the documentation pre-suit, does not constitute a basis for a claim of bad faith. Allstate is aware of the Ohio Supreme Court's decisions in *Zoppo* and *Wagner*, however I have advised them that they are inapplicable to this discussion of whether Allstate is required to produce their claim file investigative materials pre-suit. Allstate maintains their position that they have reasonable justification for denial of your client's claim.

Please be advised that neither this correspondence, nor any other correspondence or conversations that either you or your client may have had/received from me, my office or representatives of the Allstate Insurance Company, are intended to, nor should they be construed by you or your client, as constituting a waiver of any of the rights, defenses, exclusions and/or limitations that are contained in the policy of insurance. The same are specifically reserved.

If you have any questions, please contact me.

Sincerely yours,

ROHRBACHERS CRON MANAHAN
TRIMBLE & ZIMMERMAN CO., L.P.A.

Michael J. Manahan, Esq.

MJM/dw

Cc: Vicki Hoenigman/Allstate Insurance

- 2 -

## Chad Mulkey

| | |
|---|---|
| **From:** | Anne Izzi [anne.izzi@yahoo.com] |
| **Sent:** | Tuesday, October 28, 2014 7:16 PM |
| **To:** | mmanahan@rcmtz.com |
| **Cc:** | Chad Mulkey |
| **Subject:** | Re: Jones, William: Fire Loss (Allstate Claim No. 0305744120) |
| **Attachments:** | Jones,William,10-28-14.pdf |

Dear Mike,

Please find attached to this e-mail correspondence my reply to your letter to Mr. Chad Mulkey dated October 27, 2014 in which you declined to provide Allstate's internal evaluation of the claim referenced above.

I trust that the information I have provided in this correspondence will convince you to persuade your client to release these documents to us by the end of this week, so that we may advise our client as to the most prudent way to proceed in a timely manner.

Please feel free to call my cell or e-mail me if you have any questions or further concerns. I would be happy to discuss it with you at your earliest convenience.

Sincerely,
Anne M. Izzi, Esq.

Groth & Associates
Attorneys at Law
Toledo Legal Building
416 North Erie Street
Suite 100
Toledo, Ohio 43604
Cell: 419-343-4211
FAX: 419-930-3032
anne.izzi@yahoo.com

Confidentiality Notice

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

Show message history



11/6/2014



**G R O T H & A S S O C I A T E S**
Attorneys at Law

Stevin J. Groth
Daniel J. Sczesny
Christopher A. Zografides
James M. Perlman
Allison M. Lawrence
Steven L. Crossmock
Aaron Misthal
Tim A. Dugan

**Anne M. Izzi**
416 N. Erie St., Suite 100
Toledo, Ohio 43604
(419) 930-3030
Cell: (419) 343-4211
Fax: (419) 930-3032
Anne.Izzi@yahoo.com
Grothlaw.com

*David L. Petitjean
John W. Yerman
Timothy F. Braun
Chad T. Mulkey
Jevne C. Meader
**Martin D. Slavens
Anne M. Izzi

Of Counsel

Offices in Toledo, Bowling Green & Fremont, Ohio

*Also Licensed in Michigan
** Licensed in California

October 28, 2014

*SENT VIA E-MAIL &*
*SENT VIA REGULAR U.S. MAIL*
Mike Manahan, Esq.
Manahan, Trimble, Zimmerman Co., LPA
PNC Bank Building, 8th Floor
405 Madison Avenue
Toledo, Ohio 43604-1243

      Re:    My insured, William Jones, Allstate Claim No. 0305744120 MVH
             (Fire Loss at 716 Yates St., Toledo, Ohio 43608 on November 11, 2013)

Dear Mike:

      This letter is to introduce myself to you as co-counsel with Mr. Chad Mulkey in the matter of William Jones and to provide a response to your correspondence to him dated October 27, 2014. Contrary to your assertion that "we can agree that there is no legal obligation for Allstate to provide the investigation file materials pre-suit," I invite you to review the following case law. Normally I would not provide this much detail to opposing counsel, but in order to keep things moving quickly and show our willingness to provide information, I have provided the most appropriate citations from that case.

      Therefore, according to the very recent opinion below against your client, Allstate, I think that you will agree with our position that Allstate does, in fact, have a legal obligation to provide the materials to which our client (your insured) is entitled. *See; DeMarco v. Allstate Insurance Co.*, 2014-Ohio-933, 100192, Court of Appeals of Ohio , Eighth District, Cuyahoga, March 13, 2014. The court said:

"... Relative to the motion for a protective order, DeMarco contended that her Civ.R. 30(B)(5) deposition notice sought (1) non-privileged information to support her claims and (2) non-privileged information "concerning the basis of Allstate's numerous and frivolous denials." *Id.* at ¶ 7.

PLAINTIFF'S EXHIBIT

Mike Manahan, Esq.
Page 2 of 2
October 28, 2014

"In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover the insurance company's claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." Boone v. Vanliner Ins. Co., 91 Ohio St.3d 209, 744 N.E.2d 154 (2001), syllabus. *Id.* at ¶15.

"According to Allstate, its claims file was "by definition 'prepared in anticipation of litigation' [and] * * * DeMarco cannot obtain this information without showing 'good cause.'" DeMarco on the other hand contends that the subject discovery was relative to Allstate's pre-suit evaluation of the case." *Id.* at ¶21.

"We disagree with Allstate's position that, by definition, its claims file was prepared in anticipation of litigation. Allstate's business is providing insurance to insureds for a premium. Whenever an insured makes a claim, Allstate, in the ordinary course of business, opens a file for the claim. "[A]n insurance company has a routine duty to investigate accidents and, thus, such materials generated are not prepared in anticipation of litigation but prepared in the ordinary course of business." *Roggelin v. Auto-Owners Ins.*, 6thDist. Lucas No. L-02-1038, 2002-Ohio-7310, ¶ 15." *Id.* at ¶22.

"In determining whether the material are prepared in the ordinary course of business or are work product prepared in anticipation of litigation, the facts of each case must be carefully reviewed because "at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation." (Citations omitted.) *Id.*, quoting *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 71 (N.D.N.Y. 1998).

The court in *DeMarco* concluded that the discovery request related to Allstate's pre-suit evaluation of the case and, thus, was not protected under the work-product privilege. I hope that this discussion provides the support that you need to convince your client that there is no point in attempting to protect its claim file at this point, including our client's sworn statement, since all of those documents are discoverable. In the spirit of cooperation with opposing counsel and in an attempt to fully understand the situation so that we can advise our client in the most reasonable way, we again respectfully request that Allstate provide its claim file for our review.

I very much appreciate your assistance in this matter and look forward to receiving those documents as soon as possible. As you know, the SOL is looming, so time is of the essence if we are to avoid litigation.

Thank you so much for your time and I look forward to working with you in this matter. Please feel free to call me or e-mail me if you have questions or would like to discuss.

Best regards,

GROTH & ASSOCIATES

*Anne M. Izzi, ESQ.*

Anne M. Izzi, Esq.

cc: Chad T. Mulkey, Esq.



Matthew J. Rohrbacher
Nicholas J. Cron [2]
Michael J. Manahan [1]
J. Mark Trimble
Todd M. Zimmerman [1]
Russell R. Miller
Sarah V. Beaubien [1]
Matthew R. Persinger
C. Randolph Light [3]
Lynn M. Hoover [3]
Tracy B. Selis [3]

# Rohrbachers Cron
## MANAHAN TRIMBLE ZIMMERMAN CO. L.P.A.
### Attorneys at Law
### Experienced Attorneys, Personal Attention.

Vernon E. Rohrbacher (1920-1978)
Brent B. Nicholson (1954-2010)

[1] also admitted in Michigan
[2] also admitted in Florida
[3] of counsel

Toledo | Columbus

PNC Bank Building, 8th Floor
405 Madison Avenue, Toledo, Ohio 43604 -1243
Writer's Direct Contact: (419) 248-2732
mmanahan@rcmtz.com

Telephone (419) 248-2600
Fax (419) 248-2614

http://www.rcmtz.com

October 31, 2014

<u>SENT VIA E-MAIL &
ORDINARY MAIL</u>

Anne M. Izzi
Groth & Associates
416 N. Erie St.
Suite 100
Toledo, Ohio 43604

RE:  Insured:    **William Jones**
     Claim #:    **0305744120 - FIRE**
     Policy #:   **000980260172**
     DOL:        **11/11/2013**
     Location:   **716 Yates**
                 **Toledo, Ohio  43608**

     Our File #: **2452.030**

Dear Anne:

It was a pleasure speaking with you today.

As we discussed, I have reviewed the *DeMarco v. Allstate Insurance Co.* case that is cited to in your correspondence dated October 28, 2014. As I read the case, *DeMarco* deals with post suit litigation issues. Therefore, I do not find it applicable to the discussion we are having related to pre suit discovery of the Allstate claim file. Since you excerpted portions of this case that deal with discovery of the claim file, I am concerned that my prior correspondence has been misinterpreted.

To perhaps clarify, if your client instructs you to file suit, and you choose to do so on his behalf, Allstate will respond to written discovery which you may choose to file. In response to



- 1 -



discovery, Allstate will undoubtedly provide you with the *majority (but not all)* of the information that has been requested in previous correspondence received from your office.

As we discussed, in the numerous cases that I have defended in this particular field, it has been my experience that plaintiffs will receive claim file material from the onset of the claim until the time that the denial letter was issued, specifically excluding, but not limited to, claim file material that is protected by the attorney/client privilege.

Therefore, if you choose to file suit on behalf of your client, and choose to send written discovery requests to Allstate, you will have an opportunity to review the vast majority of Allstate's claim file and determine the underlying facts that formed the basis for the denial as is set forth in Allstate's claim denial letter. In turn, Allstate will have an opportunity to defend their claim decision.

Until litigation is filed, however, Allstate will, once again, decline to provide your client with their claim file information.

Please be advised that neither this correspondence, nor any other correspondence or conversations that either you or your client may have had/received from me, my office or representatives of the Allstate Insurance Company, are intended to, nor should they be construed by you or your client, as constituting a waiver of any of the rights, defenses, exclusions and/or limitations that are contained in the policy of insurance. The same are specifically reserved.

If you have any additional questions, please do not hesitate to contact me.

Sincerely yours,

ROHRBACHERS CRON MANAHAN
TRIMBLE & ZIMMERMAN CO., L.P.A.

Michael J. Manahan, Esq.

MJM/dw

Cc:    Vicki Hoenigman/Allstate Insurance

- 2 -



# GROTH & ASSOCIATES
### Attorneys at Law

Stevin J. Groth
Daniel J. Sczesny
Christopher A. Zografides
James M. Perlman
Allison M. Lawrence
Steven L. Crossmock
Aaron Misthal
Tim A. Dugan

## Chad T. Mulkey
416 N. Erie St., Suite 100
Toledo, Ohio 43604
(419) 244-8001
Fax: (419) 930-3032
Mobile (419) 810-7022
Email: chadmulkey@cmulkeylaw.com
Cmulkeylaw.com
Grothlaw.com

*David L. Petitjean
John W. Yerman
Timothy F. Braun
Chad T. Mulkey
Of Counsel

*Also Licensed in Michigan

Offices in Toledo, Bowling Green & Fremont, Ohio

August 22, 2014

Mike Manahan, Esq.
Manahan Trimble Zimmerman Co., L.P.A.
PNC Bank Building, 8th Floor
405 Madison Avenue
Toledo, Ohio 43604-1243

<u>Re</u>:  My insured, William Jones, Allstate Claim No. 0305744120 MVH (Fire Loss)

Dear Mr. Manahan,

It was a pleasure speaking to you on the phone today.  Please allow this letter to serve as an official letter of representation on behalf of my clients William and Candace Jones regarding the above-mentioned claim number.

Per our phone conversation, If you could kindly contact Allstate to inquire as to Allstate's willingness to provide photographs to me which is in your client's possession in connection with fire loss that occurred on the property located at 716 Yates St., Toledo, OH 43608.

I would like to have the photographs reviewed by an arson expert who, based on that review, would determine whether the fire was intentionally caused.  If so, that will go along way to quickly resolving this case.  I don't want to have to file a declaratory judgment just to get the photos, only to learn that there is not a claim worth pursuing, after consulting my expert.

Please let me know if you need anything further at this time as it relates to my representation, or anything else.  I really do not intend to waste time if there is no claim worth pursing.

Very truly yours,

GROTH & ASSOCIATES

Chad T. Mulkey





**Allstate.**
You're in good hands.

December 6, 2013

Mr. William Jones
2469 Lawton Avenue
Toledo, Ohio  43620

Re:  Insured:  Mr. William Jones
     Claim Number:  0305744120 MVH
     Loss Type:  Fire
     Date of Loss:  11/11/2013

Dear Mr. Jones, ,

Per your phone request of earlier today, I am presenting for your perusal a certified copy of your Allstate policy with endorsements.

If I can be of any other assistance to you please feel free to give me a call.

Allstate Property & Casualty Insurance Company has and will continue to require strict adherence to all policy of insurance terms, conditions, and requirements.  Allstate does not waive, but specifically reserves, all rights, conditions, and/or defenses under the policy of insurance including the policy one-year limitation of suit condition.

Thank you.

Respectfully,

Victoria L. Hoenigman, FCLS
Staff Claim Service Adjuster
Special Investigations Unit

PLAINTIFF'S
EXHIBIT
A

Allstate Insurance Company
P O BOX 660636
Dallas, TX  75266

Allstate Insurance Company
ATTN: VICTORIA HOENIGMAN
PO Box 404
Hudson, OH 44236

Claim# 0305744120
DOL: 11/11/2013



**Allstate**
You're in good hands.

CLAIM#  0305744120

To Whom It May Concern:

I, _Patricia Torres_____, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of _11/11/2013_____. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this _27th_____ day of _____November_____2013, before me personally

appeared _Patricia Torres_____ to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

_____
Notary Public

MARY PERL
Notary Public, State of Texas
My Commission Expires
October 17, 2016

*Allstate Agency Support Center*
*PO BOX 40047*
*ROANOKE, VA 24022*



**Your Quick Insurance Check**

√ Verify the information listed in the Policy Declarations.

√ Please call if you have any questions.

√ Now you can pay your premium before your bill is issued - visit allstate.com or call 1-800-Allstate ®.

William E Jones
716 Yates St
Toledo OH  43608-2662

### Enclosed Is A Copy Of Your Current Policy Declarations

This package contains your Allstate Property and Casualty Select Homeowners Policy Declarations—which lists your coverages, coverage limits, premiums and any discounts you're receiving. You'll want to review the Policy Declarations to make sure you're comfortable with the coverage choices you've made. Please store all of these documents with your other important papers.

### Have Questions? Please Contact Us

Give us a call at 1-800-ALLSTATE® (1-800-255-7828) if you have any questions or if you see something that needs updating—coverages, limits, deductibles. For online services, such as making a payment or viewing policy information, you can register at the Customer Care Center on *allstate.com*. And for 24-hour-a-day, 7-day-a-week service and information, just call 1-800-ALLSTATE® (1-800-255-7828).

### We Appreciate Your Business

Thanks again for choosing Allstate—where you get more than great coverage and service. You get Allstate's 75 years of business experience behind you, plus the freedom to manage your policy your way.

*Customer Service Department*

Customer Service Department

PROP *51000341305929590029941001* 00000098026D172  070  055  0H

Information as of
May 28, 2013

N2113

## Your Benefits and Opportunities

With the Allstate ® Your Choice Home **Gold Protection** package, you enjoy a wide range of rewards!

### Gold Protection Package Features at a Glance:

√  **Guaranteed Renewal for Claims**—with this feature, your policy will be renewed regardless of the number of claims you have.

√  **Claim-Free Bonus**—if you remain claim-free, you can earn a credit of up to 5%, which can be applied toward your next renewal premium. Your current credit amount is $38.12.

√  **Increased contents coverage**—for contents and valuables inside your home (while this amount is typically equal to 60% of your current Dwelling coverage limit, it is increased to 75%).

√  **Coverage for theft of jewelry, watches and furs**—up to $5000.

Please see the "Important Information" section of this form for additional Gold Protection package features information.

### New Personalized Options
In addition to Allstate ® Your Choice Home packages, we also now offer new Personalized Options. These specialized options provide specific coverage and limit combinations that cater to the individual interests of today's homeowner. Perhaps one of these Personalized Options is right for you:

**Prized Possessions** : provides extended coverage—up to $10,000—and increased limits for special assets, such as jewelry, watches and furs and increased limits for silverware.

**Home Enterprise Coverage** : provides increased coverage limits for those who work from home in an office or studio and need additional protection for equipment, supplies, furnishings and liability for business pursuits. Also includes $5000 worth of electronic data recovery expense.

**Electronic Data Recovery Endorsement** : provides expense reimbursement up to $5000 for costs associated with researching, replacing and restoring lost data. It also provides coverage in the event of lost data due to a computer virus.

**Yard & Garden** : includes higher limits and extended coverage for trees, shrubs, landscaping and motorized land vehicles (such as riding lawn mowers and garden tractors).

**Sports & Leisure** : provides expanded coverage for items such as sports equipment and increased coverage limits for certain watercraft.

**Music & Photography** : provides extended coverage for musical instruments and photography equipment.

You can add a Your Choice Home package or Personalized Option to your policy right away, without waiting for your current policy to expire—just call your Allstate representative for a quote today!

PROP *51000041305290302004100 2*

Information as of
May 20, 2013

## More Ways To Save

There are a variety of ways to save money on your Allstate homeowners insurance. Below are just a few discounts and savings options that may be available in your area (subject to qualifications).

**Home Buyer Discount**
For those who have recently purchased a home that is less than 50 years old.

**Claim Free Discount**
For those who maintain a property policy for at least one year prior to their Allstate policy's effective date and have no claims within five years.

**55 and Retired Discount**
For those who are retired and over age 55.

**Home and Auto Discount**
For those who insure their home, condo, mobile home or apartment through Allstate, as well as their auto.

**Age of Home Discount**
A varying discount based on the age of home (under 50 years old)—the newer the home, the larger the discount.

**Partially Renovated Home Discount**
For those with certain home renovations that were completed by a licensed contractor (such as a new roof or updated electrical or plumbing systems).

To learn more about these and other discounts available in your area, contact your Allstate representative today!

## IMPORTANT INFORMATION

Please read the following about the Gold Protection package features.

**Guaranteed Renewal for Claims**
Regardless of the number of claims you have, your policy will be renewed. But note that your policy may still be non-renewed for other reasons.

**Claim-Free Bonus**
For every designated twelve-month period that your policy is claim-free, a Claim-Free Bonus of up to 5% of your current policy's premium will be returned to you in the form of a credit that can be applied toward your next twelve-month renewal premium. If your policy does not renew, the credit amount will be applied to any outstanding premium balance, and any remainder refunded to you.

Note: this document provides general information about the features of the Gold Protection package you selected. The specific details, which govern how the features apply, are shown in Allstate's rates, rules, and/or forms currently in effect. Additionally, continuation of your policy is subject to Allstate's underwriting criteria.

X71644

## Allstate Property and Casualty Insurance Company

### RENEWAL
# Select Homeowners
# Policy Declarations

## Summary

**NAMED INSURED(S)**
William E Jones
716 Yates St
Toledo OH 43608-2662

PLEASE CONTACT THE ALLSTATE
CUSTOMER INFORMATION CENTER AT
1-800-ALLSTATE (1-800-255-7828)

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 80 260172 11/26 | Begins on Nov. 26, 2012 at 12:01 A.M. standard time, with no fixed date of expiration | Nov. 26, 2012 to Nov. 26, 2013 at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
716 Yates St, Toledo, OH 43608-2662

**MORTGAGEE**
- FIFTH THIRD BANCORP      ITS SUCCESSORS
  &/OR ASSIGNS
  P O Box 598      Amelia OH 45102-0598          Loan # 0405843608

## Total Premium for the Premium Period   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $867.44 |
| TOTAL | $867.44 |

Your premium reflects the Gold Protection package.

PROP *510003/130638S3020041003*

Information as of
May 28, 2013

Page 1
CPMRM0D0

# Allstate Property and Casualty Insurance Company

Policy Number:   9 89 260172 11/26
For Premium Period Beginning:   Nov. 26, 2012

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection - w/out Building Structure Reimbursement Extended Limits<br>• $1,000  All Peril Deductible Applies | $100,000 | |
| Other Structures Protection<br>• $1,000  All Peril Deductible Applies | $10,000 | |
| Personal Property Protection - Reimbursement Provision<br>• $1,000  All Peril Deductible Applies | $75,000 | |
| Additional Living Expense | Up To 12 Months | |
| Family Liability Protection | $100,000 | each occurrence |
| Guest Medical Protection | $1,000 | each person |
| Water Back-Up<br>• $500    Water Back-Up Deductible Applies | $5,000 | |

## DISCOUNTS    Your premium reflects the following discounts on applicable coverage(s):

| | | | |
|---|---|---|---|
| Home and Auto | 34.00 % | Protective Device | 5.00 % |
| Claim Free | 15.00 % | | |

## RATING INFORMATION

The dwelling is of Frame construction and is occupied by  1 family
Your dwelling is   1    mile(s) to the fire department

# Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning: Nov. 26, 2012

## Your Policy Documents

Your Homeowners policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Select Homeowners Policy form APC221
- Ext. Protection Amendatory Endorsement APC335
- Ohio Amendatory Endorsement form AP4784
- Ohio Amendatory Endorsement form APC316
- Guaranteed Renewal for Claims End. form APC308

## Important Payment and Coverage Information

Your premium is calculated based upon the dwelling protection limit you selected in the amount of $100,000.
You should be aware that this is less than the amount to rebuild your dwelling, which we have estimated to be $284,042.
This is not a replacement cost policy.

Do not pay. Mortgagee has been billed.

IN WITNESS WHEREOF, Allstate Property and Casualty Insurance Company has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate Property and Casualty Insurance Company.

Steven P. Sorenson
President

Mary J. McGinn
Secretary

# Allstate Property and Casualty Insurance Company

Policy Number:  9 80 260172 11/26
For Premium Period Beginning:  Nov. 26, 2012

# Important Notice
## *Privacy Policy Statement*

Thank you for choosing Allstate. We value you, respect your privacy and work hard protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

Our Privacy Assurance
- We do not sell your personal or medical information to anyone.
- We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

What Personal Information Do We Have and Where Do We Get It
We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, social security number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources that may include, but is not limited to, your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit *allstate.com*, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use *allstate.com*.

How We Use and Share Your Personal Information
In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:
- Fulfill a transaction you requested or service your policy

Page 1

PROP  *510030413050263306941005*


# Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning:    Nov. 26, 2012

- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:
- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use *allstate.com*.
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

### The Internet and Your Information Security
We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to *allstate.com*. The website may also use Web beacons (also called "clear GIFs" or "pixel tags" ) in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the *allstate.com* homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the web site.
This includes, for example, information regarding:
1) how we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) who should use our web site;
3) the security of information over the Internet; and
4) links and co-branded sites.

### How You Can Review and Correct Your Personal Information
You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
P.O. Box 40047
Roanoke, VA 24022-0047

### Your Preference for Sharing Personal Information
We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

Page 2

# Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning: Nov. 26, 2012

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request. If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-Allstate.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

Allstate affiliates to which this notice applies: Allstate County Mutual Insurance Company, Allstate Finance Company, Allstate Financial Services, LLC (LSA Securities in LA and PA), Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Investment Management Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Motor Club, Inc., Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Allstate Texas Lloyd's, Inc., Allstate Vehicle and Property Insurance Company, Deerbrook General Agency, Inc., Deerbrook Insurance Company, Lincoln Benefit Life Company, North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

## For California residents:

Pursuant to California law, we need to disclose to you that we would obtain your consent before sharing medical information for marketing purposes.

## For Montana residents:

Pursuant to Montana law, you may also request a record of any disclosure of your medical information during the preceding three years. Please send requests to: Allstate Insurance Company Customer Privacy Inquiries, P.O. Box 40047, Roanoke, VA 24022-0047

## For Nevada Residents:

Allstate is committed to serving you when and where you prefer as we help you protect what you have today and prepare you for the future. To that end, and as Nevada law requires, if you do not want to receive sales calls from Allstate, you have the option to be placed on our internal "do not call" list. (Please disregard this notice if you have already been added to Allstate's internal "do not call" list.) You may make this request in the following convenient ways:

- Contact your local Allstate agency
- Call 1-800-ALLSTATE and speak with a customer representative
- Visit allstate.com, click on Contact Us and send us an e-mail
- Write to us at Allstate Insurance Company, Attn: Customer Service, P.O. Box 40047, Roanoke, VA 24022-0047

Page 3

PROP *5100034130820830020041000*



# Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning:   Nov. 26, 2012

In your discussion or correspondence with us, please be sure to provide us with your name, address and all telephone numbers you wish to include on our list. If you have questions about this notice, you may contact us at the address listed above or you may also contact the Nevada Attorney General's office at:

Office of the Nevada Attorney General
Bureau of Consumer Protection
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
Phone: (702) 486-3132
Email: BCPINFO@ag.state.nv.us

Please note that Allstate's "do not call" list is limited only to telephone solicitation calls. We may still contact you about your Allstate policy, billing issues, claims and other service matters.

For Vermont residents:
We won't share your personal information with Allstate companies for marketing purposes except as allowed by Vermont law.

(ed. 8/2012)                                                                                          X66702-1v5

# Allstate Property and Casualty Insurance Company

Policy Number:  9 80 260172 11/26
For Premium Period Beginning:    Nov. 26, 2012

## *You May Qualify for Lower Rates with an Allstate Affiliate Company*

When you chose us for your property insurance, you chose our mix of price, service, and coverage over those of our competitors, and we thank you for the opportunity to serve you.

We want you to know that you may be able to save money on property insurance by switching to an affiliate Allstate company that uses a different rating plan. This rating plan was not available to you when you originally chose to insure with us.

### Additional Information About Our Affiliate Company

Our affiliate company uses a rating plan designed to compete with other insurance companies and win business in the marketplace with its mix of price, service, and coverage. The reason that Allstate has multiple companies is, in part, because introducing a new rating plan into the Allstate company that provides your current policy could potentially create price swings for you and/or other current customers ▢a situation we want to avoid as much as possible. By putting our new rating plan into our affiliated company, we were able to avoid these price swings for some of our current customers.

### Issues to Consider When Switching to an Allstate Affiliate Company

We don't know if you would save money by purchasing property insurance from our affiliate company. The rating plan our affiliate uses assigns rates, in part, based on current credit-based insurance scores, which we do not have for you.

We also want you to know that if you leave your current Allstate company and switch to our affiliate company, you will not be able to return to your current Allstate company as long as it continues its current policy of not accepting *new* customers. Our affiliate company, on the other hand, does accept new customers.

### The Choice is Yours

While we hope you're happy where you are, we encourage you to look into the rates and coverages offered by our affiliate company. You'll get great Allstate service from all of our affiliates, but each affiliate has its own mix of price and coverage, and you might save money with a different Allstate company. All you have to do is call your local Allstate agent to see if you qualify for insurance with our affiliated company, and then you can decide if a move is right for you.

Whatever you choose, we want to thank you again for looking to Allstate to protect what's important to you.

X73083

## Allstate Property and Casualty Insurance Company

Policy Number:  9 80 260172 11/26
For Premium Period Beginning:  Nov. 26, 2012

# Important Notice

## Important Information About Your Allstate Policy

The enclosed Policy Declarations includes important information, such as your address, the coverages and coverage limits you've chosen, the names of insured persons □ as well as other details pertinent to your policy. These details may include, for example, for motor vehicle policies, the drivers and vehicles you've insured, as well as the vehicle identification numbers (VIN) assigned to your insured vehicles; and, for property policies, the location of the insured property and mortgagee information, if applicable. Your Policy Declarations also lists any discounts or surcharges applied to your policy.

Because much of the information found on your Policy Declarations is used to help us determine your premium, please be sure to review your Policy Declarations carefully each time you receive one. You may want to add coverage, delete coverage or change your coverage limits □ or you may want to change other information relating to your policy, whether it be a motor vehicle, your home or other insured property. You may also want to contact your Allstate representative for information concerning discounts that may be available for your policy.

## Making changes to your policy

If you need to make a change to any of the information listed on your Policy Declarations, please notify your Allstate representative of the change as soon as possible. With a few exceptions, any changes will be effective as of the date you notify us.

If you have any questions about this notice, or if you need to update any of the information listed on the enclosed Policy Declarations, please contact your Allstate agent or our Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

X67096

# Allstate Property and Casualty Insurance Company

Policy Number:  9 80 260172 11/26
For Premium Period Beginning:    Nov. 26, 2012

# Important Notice

## Information about Flood Insurance

### Protection against flood damage

Most homeowners, renters and commercial insurance policies do not provide coverage for damage caused by floods. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program and offers standard flood insurance policies*. A flood policy can help complete the insurance protection for your property and help protect your financial well-being.

### You may need it more than you think

Approximately 90% of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25% of all flood losses occur in low to moderate risk areas.

And because flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy), selecting Allstate gives you the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more.

### It's affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy Dyou can generally switch to a flood insurance policy administered by Allstate for the same amount of premium. If you choose Allstate, you can have the service, convenience and comfort you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at *allstate.com.*

\* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

Page 1

# Allstate Property and Casualty Insurance Company

Policy Number:   9 80 260172 11/26
For Premium Period Beginning:    Nov. 26, 2012

## *Information about Scheduled Personal Property Coverage*

### *Protection for your valuables*
Allstate offers Scheduled Personal Property (SPP) coverage to help protect your valuables.

These items can include jewelry (such as engagement and wedding rings), fine art and musical instruments. Sports equipment, such as golf clubs, can also be covered by SPP.

In addition, SPP can cover valuables stored outside of your home in a safe deposit box or bank.

### *Already have SPP?*
Even if you currently have SPP coverage, it's a good idea to review your coverage annually. It's possible that the value of your property has changed or that you have purchased new items that have not been added to your coverage.

### *Affordable coverage*
The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need □the rates are generally a small percentage of the total value of the items you're insuring. This could mean that your valuables are being protected for only a fraction of the cost.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at *allstate.com.*

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

X67372v1

Page 2

## Allstate Property and Casualty Insurance Company

Policy Number:  9 60 260172 11/26
For Premium Period Beginning:    Nov. 26, 2012

# Important Notice

### Please Check Your Select Homeowners Policy's Coverage Limits

When you were first issued your Allstate Select Homeowners policy, you selected specific coverages and coverage limits to protect your home. But chances are the market has changed since that time, or the value of your home has changed, and your policy's original protection limits may no longer provide you with the right coverage.

That's why you need to carefully review your coverages and coverage limits at each renewal of your homeowners policy to make sure they continue to provide sufficient insurance protection for your home and its contents.

This is especially true with the Select Homeowners policy, because your Coverage A ⬜Dwelling Protection limits of liability will be adjusted to reflect changes in the replacement cost of your home only when you direct your Allstate agent to do so, not automatically as it would be with our other homeowners policy.

Take a few minutes to review the coverages your Select Homeowners policy presently provides, and if you have any questions about this notice, please contact your Allstate agent.

X71672

PROP *51000X41305295302094I009*

# Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning: Nov. 26, 2012

## *Notice of Changes to Your Property Policy*

From time to time Allstate will revise your coverage. We've included an Amendatory Endorsement (AP4784) in this mailing package that changes parts of your contract. Please read this endorsement and keep it with your property policy.

We're also providing you with the following summary. We hope you find it informative and useful, but keep in mind that it's not part of your contract. Always reference your policy documents for your exact coverage details.

If you have any questions about this notice or your policy coverage, you can contact your Allstate representative, call the Allstate Customer Information Center at 1-800-ALLSTATE℠ (1-800-255-7828), or visit www.allstate.com. We're here to help!

Summary of Changes

In General:

The Loss Reduction and Other Items provision has been added to your policy. The new provision states that at our discretion we may provide you, or allow others to provide you with:

1.  Items, memberships, special offers, merchandise, services, classes, seminars or other things of value designed to help you manage the risks you face, including but not limited to loss reduction or safety-related items; or

2.  Items, memberships, special offers, merchandise, services, classes, seminars or other things of any other type that we think may be of value to you.

These items may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

XC3233

## Allstate Property and Casualty Insurance Company

Policy Number: 9 80 260172 11/26
For Premium Period Beginning: Nov. 26, 2012

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Ohio
## Amendatory Endorsement □AP4784

In the GENERAL section, the following change is made:

The Loss Reduction and Other Items provision is added:

**Loss Reduction and Other Items**
From time to time and in our sole discretion, we may provide you, or allow others to provide you, with:

1. items, memberships, special offers, merchandise, services, classes, seminars or other things of value designed to help you or other persons insured under this policy manage the risks you or they face, including, but not limited to, loss reduction or safety-related items; or

2. items, memberships, special offers, merchandise, services, classes, seminars or things of any other type that we think may be of value to you or someone else insured under this policy.

These items, memberships, special offers, merchandise, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

All other policy terms and conditions apply.

PROP *5100084139852953020041010*

# Allstate Property and Casualty Insurance Company Select Homeowners Policy

Policy: (((((((((((((((((

Issued to:
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))

Effective: ////////////////////

/////////////////////////////////////
(((((((((((((((((((((((((((((((((((((
(((((((((((((((((((((((((((((((((
(((((((((((((((((((((((((((((((((

Allstate Property and Casualty Insurance Company
The Company Named in the Policy Declarations
A Stock Company—Home Office: Northbrook, Illinois 60062



APC221

*Table of Contents*

Agreements We Make With You.................2

*General*
Definitions Used in This Policy................2
Insuring Agreement ..............................4
Conformity To State Statutes ................4
Coverage Changes................................4
Policy Transfer....................................4
Continued Coverage After Your Death ........5
Cancellation ......................................5
Misrepresentation, Fraud or Concealment...5
What Law Will Apply ...........................5
Where Lawsuits May Be Brought.............5
Action Against Us.................................6
Arbitration.........................................6

*Section I—Your Property*

*Coverage A*
*Dwelling Protection*
Property We Cover Under Coverage A.........6
Property We Do Not Cover Under
Coverage A .......................................6

*Coverage B*
*Other Structures Protection*
Property We Cover Under Coverage B.........6
Property We Do Not Cover Under
Coverage B ........................................7

**Losses We Cover Under**
**Coverages A and B** .................................7

*Coverage C*
*Personal Property Protection*
Property We Cover Under Coverage C.........7
Limitations On Certain Personal Property ....7
Property We Do Not Cover Under
Coverage C ........................................8
Losses We Cover Under Coverage C ..........8

*Additional Protection*
Additional Living Expense......................10
Credit Card, Debit Card or Automated Teller
Machine Card, Bank Fund Transfer Card,
Check Forgery and Counterfeit Money.........10
Debris Removal...................................11
Emergency Removal Of Property ...............11

Fire Department Charges .......................11
Temporary Repairs After A Loss...............12
Trees, Shrubs, Plants and Lawns ..............12
Temperature Change............................12
Power Interruption ..............................12
Arson Reward.....................................12
Collapse ..........................................12
Land ...............................................13
Lock Replacement................................13

**Losses We Do Not Cover Under Coverage A,**
**Coverage B and Coverage C** .......................13

*Section I Conditions*
Deductible........................................16
Insurable Interest and Our Liability ...........16
What You Must Do After A Loss.................16
Our Settlement Options .........................17
How We Pay For A Loss..........................17
Our Settlement Of Loss .........................19
Appraisal ..........................................19
Abandoned Property.............................19
Permission Granted To You......................20
Our Rights To Recover Payment.................20
Our Rights To Obtain Salvage...................20
Action Against Us ................................20
Loss To A Pair Or Set.............................20
Glass Replacement ...............................20
No Benefit To Bailee..............................20
Other Insurance...................................20
Mortgagee.........................................21
Mold, Fungus, Wet Rot and Dry Rot
Remediation as a Direct Result of a Covered
Water Loss .........................................21

*Section II—Family Liability and*
*Guest Medical Protection*

*Coverage X*
*Family Liability Protection*
Losses We Cover Under Coverage X............21

*Coverage Y*
*Guest Medical Protection*
Losses We Cover Under Coverage Y............22

*Additional Protection*
Claim Expense.....................................22
Emergency First Aid ..............................22

Damage To Property Of Others ..................22

**Losses We Do Not Cover Under Coverage X and
Coverage Y** ............................................................22

**Section II Conditions**
What You Must Do After An Accidental
Loss ..................................................................25
What An Injured Person Must Do —
Coverage Y — Guest Medical Protection .......25
Our Payment of Loss — Coverage Y —
Guest Medical Protection ...........................25
Our Limits Of Liability ..................................25
Bankruptcy ......................................................26
Our Rights To Recover Payment —
Coverage X — Family Liability Protection ......26
Action Against Us............................................26
Other Insurance — Coverage X —
Family Liability Protection............................26

**Section III — Optional Protection**

**Optional Coverages You May Buy**
Coverage BP
Increased Coverage On Business Property ..26
Coverage DP
Increased Coverage On Electronic
Data Processing Equipment.........................26
Coverage F
Fire Department Charges............................27
Coverage G
Loss Assessments ......................................27
Coverage J
Extended Coverage On Jewelry, Watches
and Furs.......................................................27
Coverage K
Incidental Office, Private School Or Studio ..28
Coverage M
Increased Coverage On Money ...................28
Coverage P
Business Pursuits ........................................28
Coverage S
Increased Coverage On Securities ..............29
Coverage SD
Satellite Dish Antennas................................29
Coverage ST
Increased Coverage On Theft Of
Silverware....................................................29

## Agreements We Make With You

We make the following agreements with you:

## General

### Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury** — means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

2. **Building structure** — means a structure with walls and a roof.

3. **Business** — means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

   However, the mutual exchange of home day care services is not considered a **business**;

Page 2

b) the rental or holding for rental of property by an insured person. Rental of your residence premises is not considered a business when:
1) it is rented occasionally for residential purposes;
2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the residence premises at any one time; or
3) a portion is rented as a private garage.

4. Dwelling —means the single family building structure identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

5. Insured person(s) —means you and, if a resident of your household:
a) any relative; and
b) any person under the age of 21 in your care.

Under Coverage X—Family Liability Protection and Coverage Y—Guest Medical Protection, insured person also means:
a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an insured person. We do not cover any person or organization using or having custody of animals or watercraft in any business, or without permission of the owner;
b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an insured person.

6. Insured premises —means:
a) the residence premises; and
b) under Section II only:
1) the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds

you acquire for your use as a private residence while this policy is in effect;
2) any part of a premises not owned by an insured person but where an insured person is temporarily living;
3) cemetery plots or burial vaults owned by an insured person;
4) land owned by or rented to an insured person where a single family dwelling is being built as that person's residence;
5) any premises used by an insured person in connection with the residence premises;
6) any part of a premises occasionally rented to an insured person for other than business purposes.

7. Occurrence —means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

8. Property damage —means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

9. Remediation —means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain your normal standard of living if mold, fungus, wet rot or dry rot makes your residence premises uninhabitable. Remediation also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

10. Residence employee —means an employee of an insured person while performing duties arising out of and in the course of employment

Page 3

In connection with the maintenance or use of your residence premises. This includes similar duties performed elsewhere for an insured person, not in connection with the business of an insured person.

11. **Residence premises** —means the dwelling, other structures and land located at the address stated on the Policy Declarations.

12. **We, us** or **our** —means the company named on the Policy Declarations.

13. **You** or **your** — means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information you have given us, we agree to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the residence premises, applicable coverages, limits of liability and premiums. The policy applies only to losses or occurrences that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Conformity To State Statutes

When this policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When we broaden coverage during the premium period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information you have given us. You agree to cooperate with **us** in determining if this information is correct and complete. You agree that if this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly during the premium period.

Any calculation of your premium or changes in your coverage will be made using the rules, rates and forms on file, if required, for our use in your state. The rates in effect at the beginning of your current premium period will be used to calculate any change in your premium.

Your premium is calculated by applying a ratio comparing the value you select for your **Coverage A** —**Dwelling Protection** limit of liability to the replacement cost of your **residence premises**. At each policy anniversary, the replacement cost amount that is used to calculate **your** premium will be revised to reflect:
a) the rate of change in the index identified on the Policy Declarations; or
b) the minimum amount of insurance coverage we are willing to issue for the succeeding premium period under **Coverage A—Dwelling Protection** for your dwelling and other property we cover under **Coverage A— Dwelling Protection.**

## Policy Transfer

You may not transfer this policy to another person without our written consent.

Page 4

## Continued Coverage After Your Death

If you die, coverage will continue until the end of the premium period for:

1) your legal representative while acting as such, but only with respect to the residence premises and property covered under this policy on the date of your death.

2) an insured person, and any person having proper temporary custody of your property until a legal representative is appointed and qualified.

## Cancellation

**Your Right to Cancel:**
You may cancel this policy by notifying us of the future date you wish to stop coverage.

**Our Right to Cancel:**
We may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with us, we may cancel this policy for any reason by giving you at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:

1) non-payment of premium;

2) the policy was obtained by misrepresentation, fraud or concealment of material facts;

3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or

4) there has been a substantial change or increase in hazard in the risk we originally accepted.

If the cancellation is for non-payment of premium, we will give you at least 10 days notice. If the cancellation is for any of the other reasons, we will give you at least 30 days notice.

Our mailing the notice of cancellation to you will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. Your return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our Right Not to Renew or Continue:**
We have the right not to renew or continue the policy beyond the current premium period. If we do not intend to continue or renew the policy, we will mail you notice at least 30 days before the end of the premium period. Our mailing the notice of nonrenewal to you will be deemed proof of notice.

## Misrepresentation, Fraud or Concealment

We may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If we determine that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy.

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply

This policy is issued in accordance with the laws of the state in which the residence premises is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the residence premises is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside the state in which the residence premises is located, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the residence premises is located. Any and all lawsuits against persons not parties to this policy but involved in the

Page 5

sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or any other covered occurrence may also be brought in the judicial district where that covered loss to property, or any other covered occurrence happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

### Action Against Us
No one may bring an action against us unless there has been full compliance with all policy terms.

Any action against us to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within one year of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

### Arbitration
Any claim or dispute in any way related to this policy, by an **insured person** against us or us against an **insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:
a)   no arbitrator shall have the authority to award punitive damages or attorney's fees;

b)·  neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

c)   no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## Section I – Your Property

### Coverage A
### Dwelling Protection

#### Property We Cover Under Coverage A:
1.   Your dwelling including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2.   Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3.   Wall-to-wall carpeting fastened to your dwelling.

#### Property We Do Not Cover Under Coverage A:
1.   Any structure including fences or other property covered under Coverage B—Other Structures Protection.

2.   Land.

3.   Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

### Coverage B
### Other Structures Protection

#### Property We Cover Under Coverage B:
1.   Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2.   Structures connected to **your dwelling** by only a fence, utility line, or similar connection.

Page 6

3. Construction materials and supplies at the address of the residence premises for use in connection with structures other than your dwelling.

4. Wall-to-wall carpeting fastened to building structures on the residence premises other than your dwelling.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for business purposes.

2. Any structure or other property covered under Coverage A—Dwelling Protection.

3. Land.

4. Construction materials and supplies at the address of the residence premises for use in connection with the dwelling.

5. Satellite dish antennas and their systems, whether or not attached to building structures.

### Losses We Cover Under Coverages A and B:

We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

### Coverage C
### Personal Property Protection

### Property We Cover Under Coverage C:

1. Personal property owned or used by an insured person anywhere in the world. When personal property is located away from the residence premises, coverage is limited to 10% of Coverage C—Personal Property Protection.

2. At your option, personal property owned by a guest or residence employee while the property is in a residence you are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under Coverage C—Personal Property Protection. The total amount of coverage for each group in any one loss is as follows:

1. $50 — Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards and smart cards.

2. $200 — Property used or intended for use in a business while the property is away from the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $250 — Theft of any recording or storage media while such property is away from the residence premises, whether or not it is used with electronic data processing equipment or in a business. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs.

4. $500 — Theft of tools and their accessories.

5. $1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware and furs, including any item containing fur which represents its principal value.

Page 7

6.  $1,000 —  Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

7.  $1,000 —  Trading cards, subject to a maximum amount of $250 per card.

8.  $1,000 —  Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

9.  $1,000 —  Manuscripts, including documents stored on electronic media.

10.  $1,000 —  Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

11.  $1,000 —  Trailers not used with watercraft.

12.  $1,000 —  Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

13.  $1,500 —  Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a business. Recording or storage media will be covered only up to:
a)  the retail value of the media, if pre-programmed; or
b)  the retail value of the media in blank or unexposed form, if blank or self-programmed.

14.  $2,000 —  Theft of firearms, their related equipment, and accessories.

15.  $2,500 —  Motorized land vehicles used solely for the service of the insured premises and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled.

16.  $2,500 —  Theft of goldware, silverware, pewterware and platinumware.

### Property We Do Not Cover Under Coverage C:

1.  Personal property specifically described and insured by this or any other insurance.

2.  Animals.

3.  Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. We do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. We do cover motorized land vehicles designed for assisting the disabled or used solely for the service of the insured premises and not licensed for use on public roads subject to **Limitations On Certain Personal Property, Item 15.**

4.  Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5.  Property of roomers, boarders, or tenants not related to **you.**

6.  Property located away from the **residence premises** and rented or held for rental to others.

7.  Satellite dish antennas and their systems.

### Losses We Cover Under Coverage C:

We will cover sudden and accidental direct physical loss to the property described in **Coverage C** —

Page 8

**Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   We do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, we do cover canoes and ..... rowboats on the residence premises.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   We do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A dwelling under construction is not considered vacant or unoccupied.

9. Falling objects.

   We do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

    We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

    We do not cover loss at the residence premises under perils 12), 13), and 14) caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place

Page 9

when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a) theft or attempted theft committed by an **insured person**;
b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the dwelling is completed and occupied;
c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
e) theft from that part of the **residence premises** rented by you to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any building structure on the **residence premises**. This does not include damage to the glass.

## Additional Protection

1. Additional Living Expense
   a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection makes your **residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

   Payment for additional living expense as a result of a covered loss under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection will be limited to the least of the following:
   1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
   2) if you permanently relocate, the shortest time for your household to settle elsewhere; or
   3) 12 months.

   Additional Living Expense will not exceed the amount indicated on your Policy Declarations.

   b) We will pay the reasonable and necessary increase in living expenses for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a loss we insure against. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

   These periods of time are not limited by the termination of this policy.

   We do not cover any lost income or expense due to the cancellation of a lease or agreement.

   No deductible applies to this protection.

2. Credit Card, Debit Card or Automated Teller Machine Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money
   We will pay for loss:
   a) that an insured person is legally required to pay for the unauthorized use of any
      1) credit card;

Page 10

2) debit or automated teller machine card;
3) bank fund transfer card;
4) code;
5) account number;
6) personal identification number; or
7) other means of account access that can be used, alone or in conjunction with items 1) through 7) above, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds.
b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an insured person's account;
c) to an insured person through acceptance in good faith of counterfeit United States or Canadian paper currency.

Our maximum limit of liability for any one loss is $1,000, regardless of the number of persons involved. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

We do not cover:
a) loss arising from any business of an insured person;
b) loss caused by or at the direction of an insured person or any other person who has been entrusted with any credit card, debit or automated teller machine card, or bank fund transfer card;
c) loss arising out of dishonesty of an insured person.

When loss is discovered, the insured person must give us immediate notice. If the loss involves a credit card, debit or automated teller machine card, or bank fund transfer card, the insured person must also give immediate notice to the company or bank that issued the card. Failure to comply with the terms and conditions of the card voids this protection.

We will pay only for loss occurring during the policy period, including those losses discovered and reported to us within one year after the policy has terminated. We have the

right to investigate and settle any claim or suit as we deem appropriate. Full payment of the amount of insurance for any one loss ends our obligation under each claim or suit arising from the loss.

When this coverage applies, we will defend any suit brought against an insured person for the enforcement of payment that an insured person is legally required to make as a result of the unauthorized use of any credit card, debit or automated teller machine card, or bank fund transfer card issued to or registered in the name of an insured person. The defense will be at our expense, with counsel of our choice.

When this coverage applies, we have the option to defend an insured person or the insured person's bank against a suit for the enforcement of payment legally required to be made as a result of a check or negotiable instrument made or drawn upon an insured person's account. The defense will be at our expense, with counsel of our choice.

No deductible applies to this protection.

3. **Debris Removal**
We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss we cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
We will pay up to $500 for service charges made by fire departments called to protect

Page 11

your property from a loss we cover at the residence premises. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
We will reimburse you up to $5,000 for the reasonable and necessary cost you incur for temporary repairs to protect covered property from further imminent covered loss following a loss we cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
We will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Coverage A—Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the residence premises. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the residence premises, vandalism or malicious mischief, theft or collapse of a building structure or any part of a building structure.

We will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the residence premises for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**.

We do not cover trees, shrubs, plants, or lawns grown for business purposes.

This coverage does not increase the limit of liability applying to the damaged property.

8. **Temperature Change**
We will pay for loss to covered personal property in a **building structure** at the residence premises resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
We will pay up to $500 for loss to the contents of freezers and refrigerated units on the residence premises caused by the interruption of power which occurs off the residence premises, if a power interruption is known to an insured person, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**
We will cover at the residence premises:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a building structure specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss we cover under **Section I, Coverage C—Personal Property Protection**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof;
d) defective methods or materials used in construction, repair, remodeling or

Page 12

renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse as referenced herein means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent structural collapse.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss we cover under Section I, **Coverage C—Personal Property Protection;**
b) weight of persons, animals, equipment or contents; weight of rain, snow or ice which collects on a roof;
c) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

12. Land
If a sudden and accidental direct physical loss results in both a covered loss to the dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the dwelling sustaining the covered loss.

The **Section I—Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

13. Lock Replacement
When a key to a lock is stolen as part of a covered theft loss, we will pay the reasonable expenses you incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. The limit of liability under this coverage following any one theft loss is $500.

This coverage does not increase the limit of liability that applies to the covered property.

*Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C*
A. We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by the following:
1. Freezing of:
   a) plumbing, fire protective sprinkler systems, heating or air conditioning systems;
   b) household appliances; or
   c) swimming pools, hot tubs and spas within the dwelling, their filtration and circulation systems;
   or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless you have used reasonable care to:
   a) maintain heat in the **building structure;** or
   b) shut off the water supply and drain the system and appliances.

2. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not. This exclusion applies to fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks. This exclusion also applies to

swimming pools, hot tubs, spas, their filtration and circulation systems if the swimming pool, hot tub or spa is not located within a heated portion of the **dwelling.**

3. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
   a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
   b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

4. Collapse, except as specifically provided in **Section I—Additional Protection** under item 11, "Collapse."

5. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

6. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

7. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
   b) mechanical breakdown;
   c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
   d) rust or other corrosion;
   e) contamination, including, but not limited to, the presence of toxic, noxious or hazardous gasses,

chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
   f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
   g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
   h) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
   i) seizure by government authority.

If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling, we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

8. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

B. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** when:
   1) there are two or more causes of loss to the covered property; and
   2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.8 above.

Page 14

C. We do not cover loss to the property described in Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C—Personal Property Protection consisting of or caused by the following:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that:
   a) backs up through sewers or drains; or
   b) overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

3. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

   We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 3 listed above.

4. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

5. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any building, structure, other structure or land at the residence premises.

   We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

6. The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.

7. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person.

8. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the insured person is actually charged with, or convicted of, a crime.

9. Weather Conditions that contribute in any way with a cause of loss excluded under Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C to produce a loss.

10. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

Page 15

of property whether on or off the **residence premises** by any person or organization.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

D. We do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** when:
1) there are two or more causes of loss to the covered property; and
2) the predominant cause(s) of loss is (are) excluded under items C.1. through C.11 above.

E. We do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

F. We do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:
1. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any

of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

2. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

## Section I Conditions

1. **Deductible**
   We will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. We will then pay only the excess amount, unless we have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
   In the event of a covered loss, we will not pay for more than an insured person's insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, you must:
   a) Immediately give us or our agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, debit or automated teller machine card, or bank fund transfer card, give notice to the company or bank that issued the card.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.

Page 16

e) produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as we reasonably require:
   1) show us the damaged property.
   2) at our request, submit to examinations under oath, separately and apart from any other person defined as you or insured person and sign a transcript of the same.
   3) produce representatives, employees, members of the insured person's household or others to the extent it is within the insured person's power to do so; and

g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
   1) the date, time, location and cause of loss;
   2) the interest insured persons and others have in the property, including any encumbrances;
   3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
   4) any other insurance that may cover the loss;
   5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
   6) evidence supporting any claim under the Credit Card, Debit or Automated Teller Machine Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss; and
   7) at our request, the specifications of any damaged building structure or other structure.

We have no duty to provide coverage under this section if you, an insured person, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to us.

4. **Our Settlement Options**
   In the event of a covered loss, we have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

   Within 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options we intend to exercise.

5. **How We Pay For A Loss**
   Under Coverage A—Dwelling Protection, Coverage B—Other Structures Protection and Coverage C—Personal Property Protection, payment for covered loss will be by one or more of the following methods:
   a) Select Value. When the main dwelling where you reside at the residence premises is a total loss, and you decide not to repair or replace at the residence premises, we will pay the Limit Of Liability as shown on the Policy Declarations for Coverage A—Dwelling Protection.

   b) Special Payment. At our option, we may make payment for a covered loss before you repair, rebuild or replace the damaged, destroyed or stolen property if:
   1) the whole amount of loss for property covered under Coverage A— Dwelling Protection and Coverage B —Other Structures Protection, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;
   2) the whole amount of loss for property covered under Coverage C — Personal Property Protection, without deduction for depreciation, is less than $2,500 and if your Policy Declarations shows that the Personal

Page 17

Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

c)  Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make claim for additional payment as described in paragraph d) and paragraph e) below if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

d)  Building Structure Reimbursement. Under Coverage A—Dwelling Protection and Coverage B—Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss, and shall not be payable for any losses excluded in Section I—Your Property, under Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C, section E.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1)  the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises;**

2)  the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction methods or materials; or

3)  the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection,** regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If you replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to building structures and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

Page 18

1) property covered under **Coverage C — Personal Property Protection;**
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure;**
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure;** or
4) land.

Payment under a), b), c) or d) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

e) Personal Property Reimbursement. Under **Coverage C — Personal Property Protection,** we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Coverage C — Personal Property Protection,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection and Coverage B — Other Structures Protection,** except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled.

6. **Our Settlement Of Loss**
We will settle any covered loss with you unless some other person or entity is named in the policy. We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, an appraisal award or a court judgment.

7. **Appraisal**
If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
   We are not obligated to accept any property or responsibility for any property abandoned by an insured person.

9. **Permission Granted To You**
   a) The residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A building structure under construction is not considered vacant.
   b) **You** may make alterations, additions or repairs, and you may complete structures under construction.

10. **Our Rights To Recover Payment**
    When we pay for any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them. You may waive your rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of the loss.

11. **Our Rights To Obtain Salvage**
    We have the option to take all or any part of the damaged or destroyed covered property upon replacement by us or payment of the agreed or appraised value.

    We will notify you of our intent to exercise this option within 30 days after we receive your signed, sworn proof of loss. If no signed,

sworn proof of loss is requested by us, we will notify you of our intent to exercise this option within 60 days after the date you report the loss to us.

When we settle any loss caused by theft or disappearance, we have the right to obtain all or part of any property which may be recovered. An insured person must protect this right and inform us of any property recovered. We will inform you of our intent to exercise this right within 10 days of your notice of recovery to us.

12. **Action Against Us**
    No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:
    a) there has been full compliance with all policy terms; and
    b) the action is commenced within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
    If there is a covered loss to a pair or set, we may:
    a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
    b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
    Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
    This insurance will not benefit any person or organization who may be caring for or handling your property for a fee.

16. **Other Insurance**
    If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance

Page 20

shall be excess over any other insurance that covers loss by theft.

17. **Mortgagee**
A covered loss will be payable to the Mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

We will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if we cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify us in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give us the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at our option, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

18. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**
In the event of a covered water loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection or Coverage C —Personal Property Protection**, we will pay up to $5,000 for mold, fungus, wet rot or dry rot remediation.

Remediation means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under **Coverage A—Dwelling Protection, Coverage B —Other Structures Protection or Coverage C —Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain your normal standard of living if mold, fungus, wet rot or dry rot makes your **residence premises** uninhabitable. Remediation also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A—Dwelling Protection, Coverage B —Other Structures Protection or Coverage C —Personal Property Protection**.

## Section II—Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, we will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

We may investigate and settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to defend any suit or pay any claim or judgment after we have exhausted our limit of liability.

Page 21

*Coverage Y*
*Guest Medical Protection*

**Losses We Cover Under Coverage Y:**
We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an occurrence causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

**Additional Protection**

We will pay, in addition to the limits of liability:
1. **Claim Expense**
   We will pay:
   a) all costs we incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy; interest will be paid only on damages which do not exceed our limits of liability;
   c) premiums on bonds required in any suit we defend; we will not pay bond premiums in an amount that is more than our limit of liability; we have no obligation to apply for or furnish bonds;

   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at our request.

2. **Emergency First Aid**
   We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, we will pay up to $500 each time an **insured person** causes property damage to someone else's property. At our option, we will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   We will not pay for property damage:
   a) to property covered under Section I of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present business activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

**Losses We Do Not Cover Under Coverage X and Coverage Y**

A. **Losses We Do Not Cover Under Coverage X:**
   1. We do not cover **bodily injury** to an **insured person** or property damage to property owned by an **insured person** whenever any benefit of this coverage

Page 22

would accrue directly or indirectly to an insured person.

2.  We do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

3.  We do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

4.  We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

5.  We do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the property damage is caused by fire, explosion or smoke.

6.  We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

B.  **Losses We Do Not Cover Under Coverage Y:**
1.  We do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

2.  We do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional **service** conducted there.

C.  **Losses We Do Not Cover Under Coverage X and Coverage Y:**
Coverage under **Coverage X—Family Liability Protection** will be excluded for **bodily injury** and **property damage** and coverage under **Coverage Y—Guest Medical Protection** will be excluded for **bodily injury** as follows:

1.  We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
    a)  such **insured person** lacks the mental capacity to govern his or her conduct;
    b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
    c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2.  We do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any worker's compensation, non-occupational disability or occupational disease law.

3.  We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

    This exclusion does not apply to **bodily injury** to a **residence employee**.

4.  We do not cover **bodily injury** or **property damage** arising out of the ownership,

Page 23

maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;

b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

c)  a motorized wheel chair;

d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

e)  a golf cart owned by an **insured person** when used for golfing purposes;

f)  a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g)  lawn or garden implements under 40 horsepower;

h)  **bodily injury** to a residence employee.

5.  We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a)  has inboard or inboard-outboard motor power of more than 50 horsepower;

b)  is a sailing vessel 26 feet or more in length;

c)  is powered by one or more outboard motors with more than 25 total horsepower;

d)  is designated as an airboat, air cushion, or similar type of watercraft; or

e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated

by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a residence **employee**.

6.  We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. This exclusion does not apply to **bodily injury** to a residence **employee**.

7.  We do not cover **bodily injury** or **property damage** arising out of:

a)  the negligent supervision by any **insured person** of any person; or

b)  any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.  We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9.  We do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10.  We do not cover **bodily injury** or **property damage** arising out of the past or present business activities of an **insured person**.

We do cover the occasional or part-time business activities of an **insured person**

Page 24

who is a student under 21 years of age who is self-employed and has no employees.

11. We do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

12. We do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

13. We do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage**, you must do the following:
   a) Promptly notify us or our agent stating:
      1) your name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send us any legal papers relating to the accident.
   c) At our request, an **insured person** will:
      1) cooperate with us and assist us in any matter concerning a claim or suit;
      2) help us enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give us a sworn statement of the loss. This must be made within 60

days after the date of loss. Also, an **insured person** must be prepared to show us any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give us written proof of the loss. If we request, this must be done under oath.
   b) Give us written authorization to obtain copies of all medical records and reports.
   c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
   We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an **insured person**.

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, our total liability under **Coverage X — Family Liability Protection** for damages resulting from one occurrence will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence. Our total liability under **Coverage Y — Guest Medical Protection** for all medical expenses payable for bodily injury, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

Page 25

5. **Bankruptcy**
We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured person.

6. **Our Rights to Recover Payment — Coverage X — Family Liability Protection**
When we pay any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them.

7. **Action Against Us**
   a) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
   b) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage X — Family Liability Protection**, unless the obligation of an insured person to pay has been finally determined either by judgment against the insured person after actual trial, or by written agreement of the insured person, injured person and us, and the action against us is commenced within one year of such judgment or agreement.
   c) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage Y — Guest Medical Protection**, unless such action is commenced within one year after the date the expenses for which coverage is sought were actually incurred.
   d) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II — Additional Protection**, unless such action is commenced within one year after the date the claim expenses or

emergency first aid expenses for which coverage is sought were actually incurred, or within one year after the date of loss to the property if coverage is being sought under the **Damage to Property of Others** provision.
   e) No one shall have any right to make us a party to an action to determine the liability of an insured person.

8. **Other Insurance — Coverage X — Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Section III — Optional Protection

### Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in Section I or Section II and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BP**
   **Increased Coverage On Business Property**
   The limitation on business property located on the residence premises, under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the residence premises.

2. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The limitation on electronic data processing equipment under **Coverage C — Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

Page 26

3. **Coverage F**
**Fire Department Charges**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Coverage G**
**Loss Assessments**
If your residence premises includes a building structure which is constructed in common with one or more similar buildings, and you are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the insured premises means the building structure occupied exclusively by your household as a private residence, including the grounds, related structures and private approaches to them.

We will pay your share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:
a)  sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss we cover under **Section I** of this policy; or
b)  bodily injury or property damage covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

We will pay only when the assessment levied against the insured person, as a result of any one loss, for bodily injury or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to

Sections I and II of this policy and the Section I and II Conditions, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Coverage J**
**Extended Coverage On Jewelry, Watches and Furs**
**Coverage C—Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a)  jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b)  furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C—Personal Property Protection**. However, in no event will coverage be less than would have applied in the absence of **Coverage J.**

We do not cover loss caused by or consisting of:
a)  intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
   1)  may be reasonably expected to result from such acts; or
   2)  is the intended result of such acts.
b)  wear and tear, gradual deterioration, inherent vice, insects or vermin;
c)  nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke. We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
d)  war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.
e)  failure by any insured person to take all reasonable steps to preserve property

Page 27

during and after a loss or when the property is endangered by a cause of loss we cover.

Any deductible shown on the Policy Declarations applicable to Coverage C — Personal Property Protection, also applies to a loss under this coverage.

6. **Coverage K**
   **Incidental Office, Private School Or Studio**
   a) The limits applying to property used or intended for use in a business under Coverage C — Personal Property Protection do not apply to equipment, supplies and furnishings used in a described office, private school or studio at your residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

   The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to Coverage C — Personal Property Protection, Limitations On Certain Personal Property on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

   b) Coverage X — Family Liability Protection and Coverage Y — Guest Medical Protection are extended to cover a described office, private school or studio occupied by an insured person. The occupancy of the described property shall not be considered a business.

   We do not cover bodily injury to:
   a) any employee other than a residence employee; or
   b) any person arising out of corporal punishment administered by or at the direction of an insured person.

7. **Coverage M**
   **Increased Coverage On Money**
   The limitation on money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards and smart cards under Coverage C — Personal Property Protection is increased to the amount shown on the Policy Declarations.

8. **Coverage P**
   **Business Pursuits**
   Coverage X — Family Liability Protection and Coverage Y — Guest Medical Protection are extended to cover specified business pursuits of an insured person.

   We do not cover:
   a) bodily injury or property damage arising out of the business pursuits of an insured person when the business is owned or financially controlled by the insured person. This also means a partnership or joint venture of which an insured person is a partner or member;
   b) bodily injury or property damage arising out of the rendering of or failure to render a professional service of any nature, other than teaching;
   c) bodily injury to a fellow employee of an insured person arising out of and in the course of employment;
   d) bodily injury or property damage when an insured person is a member of a teaching staff or faculty of any school or college and the bodily injury or property damage arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, hovercrafts, aircraft or watercraft when owned, hired or operated by an insured person or used for the purpose of instruction; or
   e) bodily injury to any person arising out of corporal punishment administered by or at the direction of an insured person when an insured person is a member of the teaching staff or faculty of any school of instruction.

Page 28

9.  Coverage S
    **Increased Coverage On Securities**
    The $1,000 limitation on accounts, bills, deeds,
    evidences of debt, letters of credit, notes other
    than bank notes, checks, cashier's checks,
    traveler's checks, passports, securities,
    tickets, and stamps, including philatelic
    property, covered under **Coverage C—
    Personal Property Protection**, is increased to
    the amount shown on the Policy Declarations.

10. Coverage SD
    **Satellite Dish Antennas**
    **Coverage C—Personal Property Protection** is
    extended to pay for sudden and accidental
    direct physical loss to satellite dish antennas
    and their systems on your residence
    premises, subject to the provisions of
    **Coverage C—Personal Property Protection.**

    The amount of coverage is shown on the Policy
    Declarations.

11. Coverage ST
    **Increased Coverage On Theft Of Silverware**
    The limitation on theft of goldware, silverware,
    pewterware and platinumware under
    **Coverage C—Personal Property Protection** is
    increased to the amount shown on the Policy
    Declarations.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

### Guaranteed Renewal for Claims Endorsement — APC308

When the Policy Declarations indicates that the Guaranteed Renewal for Claims Endorsement applies, the following provision is added to the General section of the policy:

**Guaranteed Renewal for Claims**
When this Guaranteed Renewal for Claims provision is part of the policy, any decision by us not to renew or continue the policy will be made without regard to the number of claims reported under the policy. However, nothing in this provision shall limit our right not to renew or continue the policy for any other legally permissible reason(s), including the type(s) of claims reported under the policy.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Ohio
## Homeowners Amendatory Endorsement — APC316

I.  In the General section, the following changes are made:

A.  The Cancellation provision is deleted and replaced by the following:

**Cancellation**
**Your Right to Cancel:**
You may cancel this policy by notifying us of the future date you wish to stop coverage.

**Our Right To Cancel:**
We may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations. When this policy has been in effect for 60 days, and it is not a renewal with us, we may cancel this policy for any reason by giving you at least 30 days notice before the cancellation takes effect.

When this policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:
1)  non-payment of premium;
2)  the policy was obtained by misrepresentation, fraud or concealment of material facts;
3)  material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4)  there has been substantial change or increase in hazard in the risk we originally accepted.

If the cancellation is for non-payment of premium, we will give you at least 10 days notice. If the cancellation is for any other reasons, we will give you at least 30 days notice.

Our mailing the notice of cancellation to you will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. Your return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our Right Not To Renew Or Continue:**
We have the right not to renew or continue the policy beyond the current premium period. If we do not intend to continue or renew the policy, we will mail you notice at least 30 days before the end of the premium period. Our mailing the notice of nonrenewal to you will be deemed proof of notice.

B.  The following provision is added:

**Conditional Reinstatement**
If we mail a cancellation notice because you did not pay the required premium when due and you then tender payment by check, draft, or other remittance which is not honored upon presentation, your policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means that we will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

II.   In Section II—Family Liability and Guest Medical Protection, Losses We Cover Under Coverage X is replaced by the following:

*Losses We Cover Under Coverage X:*
Subject to the terms, conditions and limitations of this policy, we will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

All other policy terms and conditions apply.

Page 2

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Extended Protection
## Amendatory Endorsement – APC335

I.  In Section I—Your Property, Coverage C—Personal Property Protection is revised as follows:

A.  In Property We Cover Under Coverage C, item 1. is replaced by the following:

1.  Personal property owned or used by an insured person anywhere in the world. When personal property is located at a residence other than the residence premises, coverage is limited to 10% of Coverage C—Personal Property Protection. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after you begin to move property there, personal property in use at a temporary residence when a direct physical loss we cover makes your residence premises uninhabitable, or to personal property in student dormitory, fraternity or sorority housing.

B.  The Limitations On Certain Personal Property provision is replaced by the following:

*Limitations On Certain Personal Property:*
Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under Coverage C—Personal Property Protection. The total amount of coverage for each group in any one loss is as follows:

1.  $200 —   Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards and smart cards.

2.  $200 —   Property used or intended for use in a business while the property is away from the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3.  $500 —   Theft of any recording or storage media while such property is away from the residence premises, whether or not it is used with electronic data processing equipment or in a business. Recording or storage media includes, but is not limited to:
    a)  tapes;
    b)  CDs, DVDs and other discs;
    c)  records;
    d)  disks;
    e)  reels;
    f)  cassettes;
    g)  cartridges; or
    h)  programs.

Page 1

4. $1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

6. $1,000 — Manuscripts, including documents stored on electronic media.

7. $1,000 — Trailers not used with watercraft.

8. $2,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

9. $2,000 — Property used or intended for use in a business, including property held as samples or for sale or delivery after sale, while the property is on the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

10. $2,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $10,000 — Motorized land vehicles used solely for the service of the insured premises and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled.

12. $3,000 — Theft of firearms, their related equipment, and accessories.

13. $5,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

14. $2,500 — Theft of goldware, silverware, pewterware and platinumware.

15. $10,000 — Theft of tools and their accessories.

II. In Section I—Your Property, Additional Protection is revised as follows:

A. Item 1. Additional Living Expense is replaced by the following:

1. Additional Living Expense

   a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under Coverage A – Dwelling Protection, Coverage B —Other Structures Protection or Coverage C—Personal Property Protection makes your residence premises uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any

Page 2

amounts paid or payable under Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

Payment for additional living expense as a result of a covered loss under Coverage A —Dwelling Protection, Coverage B —Other Structures Protection or Coverage C —Personal Property Protection will be limited to the least of the following:

1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
2) if you permanently relocate, the shortest time for your household to settle elsewhere; or
3) 12 months.

b) We will pay the reasonable and necessary increase in living expenses for up to two weeks should civil authorities prohibit the use of the residence premises due to a loss at a neighboring premises caused by a loss we insure against. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

These periods of time are not limited by the termination of this policy.

We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

8. Item 9. Power Interruption is replaced by the following:

9. Power Interruption
We will pay for loss to the contents of freezers and refrigerated units on the residence premises caused by the interruption of power which occurs off the residence premises. If a power interruption is known to an insured person, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

III. In Section II —Family Liability and Guest Medical Protection, under Additional Protection, item 3 is replaced by the following:

3. Damage To Property Of Others
At your request, we will pay up to $1,000 each time an insured person causes property damage to someone else's property. At our option, we will pay the cost to either repair or replace the property damaged by an insured person, without deduction for depreciation.

We will not pay for property damage:
a) to property covered under Section I of this policy;
b) to property intentionally damaged by an insured person who has attained the age of 13;
c) to property owned by or rented to an insured person, any tenant of an insured person, or any resident in your household; or
d) arising out of:

Page 3

1) past or present business activities;
2) any act or omission in connection with a premises, other than an insured premises, owned, rented or controlled by an insured person; or
3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

IV.  In Section III — Optional Protection, under Optional Coverages You May Buy, the following item is added:

12.  Coverage WB
Water Back-Up
We will cover sudden and accidental direct physical loss to property we cover under Coverage A — Dwelling Protection, Coverage B — Other Structures Protection and Coverage C — Personal Property Protection caused by water or any other substances within your dwelling or other building structures on the residence premises which:

a.   backs up through sewers or drains located within the residence premises; or
b.   overflows from a sump pump, sump pump well or other system located within the residence premises designed for the removal of subsurface water which is drained from a foundation area of a structure.

The insurance provided by Coverage WB shall be excess over any other insurance that also applies to a loss covered under this coverage.

This coverage does not apply if the loss occurs or is in progress within the first ten days that coverage is initially bound.

The specific limit of liability for Coverage WB — Water Back-up is shown on your Policy Declarations. This is the total amount available under this coverage for any one loss. The deductible for Coverage WB — Water Back-Up will apply to a loss covered by this endorsement. The deductible for Coverage WB — Water Back-up will be shown on your Policy Declarations.

All other policy terms and conditions apply.

Page 4